943 A.2d 216

**John Andrew GREGG, Executor of the Estate of John I. Gregg, Jr., Deceased, Appellee,**

v.

**V–J AUTO PARTS, COMPANY, Appellant.**

Supreme Court of Pennsylvania.

Resubmitted May 30, 2007.

Decided Dec. 28, 2007.

Robert Perna Corbin, Esq., Jocelyne Clare Peregoy, Esq., German, Gallagher & Murtagh, P.C., Philadelphia, for V–J Auto Parts Company.

James Michael Beck, Esq., Dechert, L.L.P., Philadelphia, for Product Liability Advisory Council, Inc.

Michael Lee Martinez, Esq., Crowell & Moring, L.L.P., for Coalition of Litigation Justice, Inc.

Richard P. Myers, Esq., Paul, Reich & Myers, P.C., Philadelphia, for John Andrew Gregg.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

Justice SAYLOR.[1]

The question presented concerns the appropriate application of the "frequency, regularity, proximity" criteria in asbestos product liability litigation.

John I. Gregg, Jr. ("Mr. Gregg") died in March 1998. A year later, his son, Appellee John Andrew Gregg, as executor for his father's estate, filed a product liability complaint naming more than seventy defendants and alleging civil liability on their part for Mr. Gregg's death due to his exposure to asbestos-containing products and resultant pleural mesothelioma, a cancer of the lining of the lungs. Appellee averred that Mr. Gregg was exposed to asbestos throughout a forty-year history of employment with telecommunications companies as a cable splicer and line man; over a four-year period in which he worked as a gas station attendant; and during a three-year period while serving in the United States Navy. The complaint also alleged that, throughout his lifetime, Mr. Gregg installed and removed brake linings and clutches on cars and trucks, and that he was exposed to asbestos in these activities as well. By virtue of this last 'set of averments, Appellee included as defendants Allied–Signal, Inc., a successor corporation to Bendix Corporation, which manufactured brake products in the relevant time frame, and Appellant, V–J Auto Parts Company, a supplier of automobile parts.

Despite the assertions in the complaint concerning occupational exposure to asbestos, according to Appellee, he was unable to adduce any evidence to support them. Consequently, the action was settled and/or dismissed with regard to all defendants other than Appellant,[2] and the litigation efforts focused on Mr. Gregg's personal automotive maintenance activities.

After the deadline for discovery passed, Appellant filed a motion for summary judgment, asserting that Appellee could

1. This case was reassigned to this author.

2. Summary judgment was also granted in favor of Allied Signal, Inc., and the propriety of this decision is not at issue in the present appeal.

not prove that Mr. Gregg was exposed to an asbestos-containing product purchased at Appellant's store with sufficient frequency and regularity to meet the test set forth in *Eckenrod v. GAF Corp.*, 375 Pa.Super. 187, 544 A.2d 50 (1988) ("Whether a plaintiff could successfully get to the jury or defeat a motion for summary judgment by showing circumstantial evidence depends upon the frequency of the use of the product and the regularity of plaintiff's employment in proximity thereto."). According to the motion, Appellee could at best demonstrate that Mr. Gregg used brake products purchased from Appellant's store on two or three occasions throughout his entire lifetime; Appellee could not establish that any products purchased by Mr. Gregg from Appellant's store contained asbestos; and Appellee's own expert witness, pathologist Harvey B. Spector, M.D., attributed Mr. Gregg's disease solely to an "occupational history of exposure to asbestos," and not to non-occupational exposure such as Mr. Gregg's automobile maintenance activities.

In response, Appellee argued that his deposition testimony, and that of his sister and a neighbor of the Gregg household in the 1960 to 1965 timeframe, sufficiently established Mr. Gregg's exposure to asbestos-containing brake products sold by Appellant. Further, Appellee furnished a modified version of Dr. Spector's report, in which the pathologist revised his opinion to attribute Mr. Gregg's disease to "occupational and non-occupational" asbestos exposures, indicating that the change resulted from his review of the depositions of the product identification witnesses. Appellee also submitted documents attributable to Allied Signal, Inc. and Raybestos–Manhatten, Inc., supporting the claim that the brake products manufactured by these companies (or their predecessors) in the 1950s and 1960s time frame contained asbestos. Further, Appellee relied on expert affidavits of a chemist, an occupational disease physician, and an epidemiologist to establish that mesothelioma may be caused by even a small exposure to asbestos.

Upon receiving the Appellee's response and the supplemental report, Appellant filed a motion to strike the supplemental

report and to preclude Appellee from relying upon it at trial. Appellant argued that the supplemental report was untimely, in that it was not produced until after the deadline for expert reports had passed, and that the report was prejudicial, since the case was scheduled to go to trial in two weeks.

The common pleas court (per Judge Tereshko) granted summary judgment in Appellant's favor, on the ground that Appellee's product identification testimony was inadequate. *See Gregg v. V-J Auto Parts,* No. 003888 March Term 1999, *slip op.,* 2001 WL 35923757 (Nov. 6, 2001). Initially, the court accepted Appellant's argument that the frequency, regularity, proximity analysis discussed in *Eckenrod* should apply. *See id.* at 3 ("The courts in Pennsylvania have been consistent in requiring the plaintiff to produce evidence that he frequently and regularly used, or worked in sufficient proximity to, a specific defendant's asbestos-containing product, and that he inhaled asbestos fibers shed therefrom in order to overcome a motion for summary judgment."). The common pleas court recognized that there was sufficient evidence that Mr. Gregg was exposed to asbestos at some point during his lifetime, and that this exposure caused his illness, but it found insufficient evidence linking the exposure to either Allied Signal, Inc. or Appellant to create a triable issue. In this regard, the court observed that the product identification witnesses were unable to confirm that Mr. Gregg specifically used brakes manufactured by Bendix Corporation and sold by Appellant, or more broadly, that Bendix Corporation manufactured, and Appellant distributed, the asbestos-containing product that was the cause of Mr. Gregg's disease.[3] The court's opinion elaborated fairly extensively concerning the vagueness of the recollections of the product identification witnesses concerning circumstances and events from thirty-five to forty years earlier. *See id.* at 3–5.

3. It is unclear why the court focused only on Bendix Corporation products in relation to Appellant's potential liability, since Appellee also adduced product identification testimony indicting that Mr. Gregg was also exposed to Raybestos brake products sold by Appellant.

Appellee appealed to the Superior Court, and a three-judge panel vacated the common pleas court's order and remanded in an unpublished opinion. *See Gregg v. A.P. Green Industries, Inc., slip op.* 813 A.2d 912 (Pa.Super. Sep. 9, 2002). The panel concluded that the common pleas court erred because, regardless of whether there was sufficient evidence to identify a particular manufacturer, there was enough evidence to show brake products containing asbestos were purchased from Appellant's store. The Superior Court panel indicated, however, that it was unclear whether Appellee could present sufficient evidence to show that the amount of Mr. Gregg's exposure to asbestos in the relatively few times that he was shown to have changed asbestos-containing brakes, as compared to the forty-plus years of occupational exposure to asbestos containing products asserted in the complaint, was a substantial contributing factor to his disease. *See id.* at 3, 7. Thus, the court remanded for such a determination.[4]

On remand, the common pleas court (per Judge Ackerman) again found the record insufficient to meet the requirements of the frequency, regularity, and proximity analysis. *Gregg v. V-J Auto Parts, Inc.,* No. 003888 March Term 1999, *slip op.* (C.P.Phila. Dec.2, 2003). The court highlighted that Appellee did not remember specific parts purchased from Appellant's store; Appellee's sister had no knowledge concerning whether products purchased from Appellant's store contained asbestos; and the household neighbor assumed that brake products purchased from Appellant's store contained asbestos and could only recall two or three times in which he saw Mr. Gregg installing brake products purchased from Appellant. The common pleas court explained:

4. The panel also noted that the common pleas court's position on the motion to strike Dr. Spector's supplemental expert report was unclear from the record, and thus, it required clarification on remand.

Judge Montemuro dissented, taking the position that no issue was raised by Appellee concerning the expert report, and the report was untimely and, therefore, should not be considered.

On remand, the common pleas court denied the motion to strike the supplemental expert report.

This court is mindful that there is no requirement that plaintiff must prove how many asbestos fibers one must inhale necessary to a determination of causation; however, evidence of exposure must demonstrate that the plaintiff worked, on a regular basis, in physical proximity with the product and that his contact with same was of such nature as to raise a reasonable inference that he inhaled asbestos fibers that emanated from it. *See Junge v. Garlock*, 427 Pa.Super. 592, 629 A.2d 1027 (1993); *Samarin v. GAF Corp.*, 391 Pa.Super. 340, 571 A.2d 398 (1989); *Eckenrod.* The fact that plaintiff's supplemental medical expert opined that Mr. Gregg's occupational exposure and his non-occupational exposure from performing brake jobs both contributed to his mesothelioma, this is non determinative since our case law requires the plaintiff to produce sufficient evidence of regular and frequent exposure to asbestos products supplied by the defendant. It is acknowledged that decedent was exposed to asbestos sometime during his lifetime, and that exposure caused his illness, but there is insufficient evidence that links his asbestos exposure to the defendant in this matter.

*Id.* at 5. Finally, the court relied on *Wilson v. A.P. Green Industries, Inc.*, 807 A.2d 922 (Pa.Super.2002), as rejecting the argument that the frequency, regularity and proximity test should not apply in mesothelioma cases. *See id.* at 4–5 (quoting *Wilson,* 807 A.2d at 925).

On further appeal, initially, a different Superior Court panel affirmed, finding that the common pleas court correctly determined that Appellee's product identification evidence was insufficient to create a jury issue. *See Gregg v. V–J Auto Parts Co.,* No. 3528 EDA 2003, *slip op.* (Pa.Super. Jul. 22, 2004). On Appellee's motion for reconsideration, however, the panel withdrew its initial opinion, and, in a subsequent one, it reversed the common pleas court's summary judgment order. *See Gregg v. V–J Auto Parts Co.,* No. 3528 EDA 2003, *slip op.,* 2005 WL 1596624 (Pa.Super. Apr. 25, 2005). The panel reasoned that the case could not be disposed on the issue of product identification, since that issue had been addressed and

resolved in Appellee's favor by a prior Superior Court panel decision. *See id.* at 6 (citing *Gregg v. A.P. Green Industries, Inc., slip op.* at 2 (Pa.Super. Sep. 9, 2002) ("there *was* sufficient evidence to show brake linings containing asbestos were *purchased* from V–J" (emphasis in original))). In terms of the application of the frequency, regularity, proximity criteria, the court drew a distinction between cases in which there is direct evidence of exposure and those in which the evidence of exposure is circumstantial. Relying on *Gilbert v. Monsey Products, Co.,* 861 A.2d 275 (Pa.Super.2004), the panel concluded that the frequency, regularity, proximity analysis was inapplicable where there is direct evidence that a plaintiff (or his decedent) inhaled asbestos fibers deriving from a defendant's product. *See Gregg,* No. 3528 EDA 2003, *slip op.* at 11. Thus, the panel determined, essentially, that direct testimony concerning exposure to a defendant's asbestos-containing product will always raise material questions of fact concerning causation that can be resolved only by the fact finder. *See id.* at 16 (citing *Gilbert,* 861 A.2d at 276–77 ("The question as to whether there was sufficient regularity and frequency so as to cause [the a]ppellant's injury [in a direct evidence case] is a question for the jury.")). As direct evidence, the panel referenced the testimony of the Gregg household neighbor as "mak[ing] clear that both the removal of worn brakes and the installation of new brakes, both of which the decedent purchased from V–J, created airborne dust." *See Gregg,* No. 3528 EDA 2003, *slip op.* at 13. Further, the panel distinguished *Eckenrod,* as representing a case in which the plaintiff relied entirely on evidence of workplace circumstances to establish exposure inferentially. *See id.* at 12.

Judge Bowes dissented, expressing her disagreement with the majority's reasoning and with *Gilbert.* According to Judge Bowes, the frequency, regularity, proximity test is appropriately applied by courts at the dispositive motions stage, regardless of whether the evidence of exposure is direct or circumstantial in character. She highlighted *Eckenrod's* reaffirmance that, in order to survive a motion for summary judgment, every plaintiff, whether relying on direct or circum-

stantial evidence, must point to "sufficient material facts in the record to indicate that there is a genuine issue of material fact as to the causation of [the plaintiff's or the] decedent's disease" by the defendant's product. *Gregg,* No. 3528 EDA 2003, *slip op.* at 4 (Bowes, J., dissenting) (quoting *Eckenrod,* 375 Pa.Super. at 192, 544 A.2d at 53). Judge Bowes took the position that a subsequent reference in *Eckenrod,* which indicated that plaintiffs who rely solely on circumstantial evidence must show frequent use and regular proximity to the product, was explanatory in nature and should not be construed as relieving plaintiffs who offer direct evidence of the same burden. *See id.* at 4–5 (citing *Eckenrod,* 375 Pa.Super. at 192, 544 A.2d at 53). Indeed, the dissent noted that the Superior Court had, on multiple occasions applied the frequency, regularity, proximity criteria in cases in which plaintiffs personally described their exposure to specific asbestos-containing products. *See id.* at 5 (citing *Lonasco v. A–Best Products Co.,* 757 A.2d 367, 376 (Pa.Super.2000), and *Coward v. Owens–Corning Fiberglas Corp.,* 729 A.2d 614, 623 (Pa.Super.1999)). Like the common pleas court, Judge Bowes observed that the much of the testimony proffered by Appellee pertaining to frequency, regularity, and proximity was vague and generalized. Viewing the evidence in the light most favorable to Appellee, Judge Bowes found the deposition testimony indicated that Mr. Gregg installed asbestos-containing brakes purchased from Appellant's store on three occasions over a five-year period, and that he was exposed to airborne fibers for less than thirty minutes each time that he installed new brake shoes. Judge Bowes agreed with the common pleas court that this evidence did not meet the frequency, regularity, proximity test.

On Appellant's petition for allowance of appeal, this Court granted further review, limited to the following issue:

In a products liability suit brought against the manufacturer or supplier of a product containing asbestos, to survive summary judgment must the plaintiff show frequent use of, and regular close proximity to, the product, even if the plaintiff presents direct evidence of inhalation?

Since this is a question of law, our standard of review is *de novo* and our scope of review is plenary. Notably, in Pennsylvania, the frequency, regularity, proximity analysis has developed in the decisions of Superior Court and has not yet been addressed by this Court.

Presently, Appellant advocates the adoption by this Court of the frequency, regularity, proximity test and its application by the courts at the dispositive motions stage of asbestos product liability litigation. Appellant regards the analysis as a straightforward application of the requirement for plaintiffs to prove substantial-factor causation as an essential element of a negligence or strict liability claim. Appellant traces the history of the frequency, regularity, proximity test to *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir.1986), in which a federal court formulated a *de minimus* rule by which the viability an asbestos product liability claim is assessed according to the frequency of the use of the product and the regularity or extent of the plaintiff's (or decedent's) employment in proximity to the product. *See id.* at 1162. Appellant highlights that, in *Lohrmann,* the plaintiff presented evidence that he was exposed to a specific asbestos-containing product ten to fifteen times for a duration of one to eight hours over a thirty-nine year period, which was held to be insufficient to raise an inference that the exposure was a substantial factor in the development of his disease. *See id.* at 1163. According to Appellant, the frequency, regularity, proximity test has been adopted in a majority of jurisdictions in evaluating whether there is sufficient proof to support a reasonable inference of substantial-factor causation in an asbestos product liability case. *See generally Slaughter v. Southern Talc Co.*, 949 F.2d 167, 171 (5th Cir.1991) ("The most frequently used test for causation in asbestos cases is the 'frequency-regularity-proximity' test announced in *Lohrmann[.*]").

Consistent with Judge Bowes' position, Appellant also argues that the Superior Court's *Eckenrod* decision has been misinterpreted to exclude the use of the frequency, regularity, proximity criteria whenever direct evidence of exposure is offered. Appellant urges that their application should not

depend on what type of evidence is adduced, but instead, upon whether the evidence, be it direct or circumstantial, creates a genuine issue of material fact concerning the cause of the plaintiff's (or decedent's) disease. Appellant observes that a plaintiff's burden of proof to demonstrate factual and proximate causation does not depend on whether the evidence is direct or circumstantial. Further, Appellant contends that plaintiffs rarely are able to offer evidence that is exclusively direct or circumstantial—most commonly, a plaintiff offers a combination of both categories of evidence. Moreover, Appellant develops that Pennsylvania courts do not place more or less weight on direct versus circumstantial evidence by reason of the character of the evidence alone.[5]

Appellant also advances several policy bases supporting the adoption of the frequency, regularity, proximity test in cases involving either direct or circumstantial evidence, or both. In particular, Appellant believes that the application of any looser test yields unfair results. For example, viewing the circumstances of the present case, Appellant believes that it is unfair for Appellee to hale a peripheral defendant, such as a retailer of automobile parts, into court based on direct evidence of minimal exposure, while ignoring Mr. Gregg's forty-some-year history of occupational exposure to asbestos as asserted in the complaint. *See, e.g.*, Brief for Appellant at 20 ("The plaintiff expected the trial court to turn a blind eye to all of the decedent's occupational exposure in favor of placing liability on a party unlikely to have caused decedent's illness."). According to Appellant, permitting plaintiffs to pursue wholesale liability based on minor or infrequent exposure is out of sync with all reasonable probabilities concerning causation and creates a perverse incentive for plaintiffs to most aggressively

**5.** *See, e.g., Commonwealth v. Bricker,* 882 A.2d 1008 (Pa.Super.2005) ("We have held that circumstantial evidence is reviewed by the same standards as direct evidence."); *Monaci v. State Horse Racing Comm'n,* 717 A.2d 612, 618 (Pa.Cmwlth.1998) ("When properly proved, circumstantial evidence is entitled to as much weight as direct evidence."). *See generally Lilley v. Johns–Manville Corp.,* 408 Pa.Super. 83, 93, 596 A.2d 203, 207 (1991) (explaining that "the nexus between a specific asbestos product and a plaintiff's medical condition may be supplied by a variety of direct and circumstantial evidence.").

pursue those with the least possible culpability. Appellant also complains that the realities of asbestos litigation, in which plaintiffs sue almost every known manufacturer or distributor of asbestos-containing products, places an unfair hardship on parties such as Appellant, a small retailer of a wide variety of products, of which a minimum contained asbestos but have not been sold in decades.

Finally, Appellant criticizes Appellee's reliance on the conclusion in Dr. Spector's supplemental report that non-occupational exposure was a substantial cause of Mr. Gregg's disease, quoting the lead opinion from *Summers v. Certainteed Corp.*, 886 A.2d 240 (Pa.Super.2005) (equally divided court), authored by Judge Klein, as follows:

> Just because a hired expert makes a legal conclusion does not mean that a trial judge has to adopt it if it is not supported by the record and is devoid of common sense. For example, [the plaintiff's liability expert] used the phrase, "Each and every exposure to asbestos has been a *substantial* contributing factor to the abnormalities noted." However, suppose an expert said that if one took a bucket of water and dumped it into the ocean, that was a "substantial contributing factor" to the size of the ocean. [The expert's] statement saying every breath is a "substantial contributing factor" is not accurate. If someone walks past a mechanic changing brakes, he or she is exposed to asbestos. If that person worked for a factory making lagging, it can hardly be said that one whiff of the asbestos from the brakes is a "substantial factor" in causing disease.

*Id.* at 244 (emphasis in original). Appellant likens its circumstance to that of the defendant in *Chavers v. General Motors Corp.*, 349 Ark. 550, 79 S.W.3d 361 (2002) (considering frequency, regularity, and proximity of alleged exposure to asbestos via brake products to conclude that the plaintiff's evidence did not present a jury question), contending that such case is on all fours with the present one.

Appellee, on the other hand, opposes the application of any form of *de minimus* screening test, particularly in mesothelioma cases. Appellee stresses that mesothelioma is unique

among asbestos-caused diseases, in that it can develop after low-dose exposures. *See* Affidavit of Richard A. Lemen, Ph.D., dated September 28, 2000 ("There is no safe level of exposure to asbestos below which human beings are not at risk of developing an asbestos disease particularly mesothelioma[;] ... [m]esothelioma may be caused by slight, transient and short exposures to asbestos and all exposures contribute to the risk of developing mesothelioma."). Thus, Appellee contends that plaintiffs should be permitted to prove causation through any combination of direct and circumstantial evidence of asbestos exposure which may exist, so long as a qualified medical expert renders an opinion that such exposure was a substantial factor in causing the disease. Brief for Appellee at 17 ("the quantification/*de minimus* issue ... is a fact-specific issue of medical causation in each case.").

According to Appellee, the Superior Court has largely followed such approach. *See, e.g., Lilley v. Johns–Manville Corp.,* 408 Pa.Super. 83, 98, 596 A.2d 203, 210 (Pa.Super.1991) (affirming an asbestos product liability jury verdict, while highlighting a medical expert's testimony that "even one day's exposure to asbestos dust constituted a 'substantial contributing factor' "). Appellee also offers a different perspective from Appellant's concerning the prevailing approach of the courts across jurisdictions, contending the majority refuse to apply a *de minimus* standard, *see, e.g., Purcell v. Asbestos Corp.,* 153 Or.App. 415, 959 P.2d 89, 94 (1998) (rejecting *Lohrmann* as setting too high a burden for plaintiffs in a mesothelioma case); *Horton v. Harwick Chemical Corp.,* 73 Ohio St.3d 679, 653 N.E.2d 1196, 1201 (1995) (same, in an asbestosis case), or at least assess regularity, frequency, and proximity in light of the medical evidence of causation, *see, e.g., Thacker v. UNR Industries, Inc.,* 151 Ill.2d 343, 177 Ill.Dec. 379, 603 N.E.2d 449, 460 (1992). Indeed, Appellee contends that *Lohrmann* is no longer good law in the jurisdiction in which it arose, in light of the Maryland Court of Appeals' decision in *Eagle–Picher v. Balbos,* 326 Md. 179, 604 A.2d 445 (1992), which demonstrates that medical causation shapes the legal causation question.

To the extent frequency, regularity, and proximity are relevant, Appellee agrees with the Superior Court that the application of the test should be limited to circumstantial evidence cases. Appellee explains that, when only circumstantial evidence is presented, an initial question arises concerning whether the injured party ever came into contact with any asbestos at all; whereas, in a direct evidence case, exposure is not at issue at the dispositive pre-trial motions stage. Under Appellee's approach, the only issue to be resolved in a direct evidence case is whether that asbestos exposure caused the injured person's disease, and causation is demonstrated through the medical testimony establishing the relationship between the exposure and the asbestos-related disease.

Appellee also disputes Appellant's characterizations of Mr. Gregg's automobile maintenance work as "casual" and "recreational" and suggests that a better characterization would be "quasi-occupational." While Appellee recognizes that he was able to identify only a few incidents of Mr. Gregg's exposure concretely, he maintains that the more general references in the testimony are circumstantial evidence that Mr. Gregg performed brake changes with asbestos-containing products from Appellant's store more frequently. Further, Appellee criticizes Appellant's efforts to compare Mr. Gregg's asserted occupational exposure with his exposure while changing brakes, explaining that there is no evidence of occupational exposure. Moreover, Appellee notes that he has filed a motion to amend his complaint to remove the allegations of occupational exposure. Appellee distinguishes the *Chavers* decision, relied upon by Appellant, as involving actual evidence of substantial occupational exposure to asbestos and weaker evidence of exposure in automobile maintenance activities.

As to policy, Appellee asserts that there are no "floodgates of litigation" involving mesothelioma, the occurrence of which has remained about 3,000 cases per year in the United States, which Appellee indicates that courts historically have been able to handle without significant difficulty. Thus, Appellee suggests that there is no reason for this Court to create an additional barrier for victims of the disease and/or their

representatives to surmount before their cases can be presented before juries.

At the outset, Appellee is correct that the use of the frequency, regularity, proximity analysis arose out of circumstances in which the exposure of the plaintiffs (or their decedents) to the defendants' asbestos-containing products could not be demonstrated directly. In many of these cases, the most that the plaintiffs were able to demonstrate was that the plaintiff worked in a facility, and the defendant's product was at some time used in the same facility. *See, e.g., Lohrmann*, 782 F.2d at 1162 ("Appellants would have us adopt a rule that if the plaintiff can present any evidence that a company's asbestos-containing product was at the workplace while the plaintiff was at the workplace, a jury question has been established as to whether that product contributed as a proximate cause to the plaintiff's disease."); *Eckenrod*, 375 Pa.Super. at 192, 544 A.2d at 53 ("The mere fact that appellees' asbestos products came into the facility does not show that the decedent ever breathed these specific asbestos products or that he worked where these asbestos products were delivered."). The foundational cases are therefore distinguishable from the present circumstances, at least to the degree that a witness described Mr. Gregg, on two or three occasions, breathing dust created when he "scuffed" asbestos-containing brake pads obtained from Appellant with sandpaper.[6]

Like many other courts, however, we believe that the criteria should have broader application in the courts'

---

**6.** While Appellant maintains that Appellee cannot demonstrate that the brake pads contained asbestos, the witness testified that installations that he saw were of Raybestos products, and Appellee has adduced evidence that Raybestos brake products sold in the relevant period contained asbestos.

Testimony that Mr. Gregg also breathed dust while cleaning out the wheel wells of automobiles during the brake-changing process is less direct, since a number of inferences are required to connect the dust to brake products purchased from Appellant. For example, there was no testimony that Mr. Gregg procured brake products exclusively from Appellant's store (indeed, there was evidence that he bought some items from another automobile supply store in which he previously had worked).

assessment of the sufficiency of a plaintiff's proofs. *See, e.g.,*
*Lindstrom v. A–C Product Liability Trust,* 424 F.3d 488, 492
(6th Cir.2005) (reflecting that the Sixth Circuit has "permitted
evidence of substantial exposure for a substantial period of
time to provide a basis for the inference that the product was
a substantial factor in causing the injury," but that " '[m]ini-
mal exposure' to a defendant's product is insufficient." (cita-
tion omitted)). In this regard, the decision in *Tragarz v.*
*Keene Corp.,* 980 F.2d 411 (7th Cir.1992), referenced by both
parties, provides helpful guidance concerning the application
of the frequency, regularity, proximity factors in asbestos
litigation. *Tragarz* explains that these criteria do not estab-
lish a rigid standard with an absolute threshold necessary to
support liability. *See id.* at 420. Rather, they are to be
applied in an evaluative fashion as an aid in distinguishing
cases in which the plaintiff can adduce evidence that there is a
sufficiently significant likelihood that the defendant's product
caused his harm, from those in which such likelihood is absent
on account of only casual or minimal exposure to the defen-
dant's product. *See id.* Further, *Tragarz* suggests that the
application of the test should be tailored to the facts and
circumstances of the case, such that, for example, its applica-
tion should become "somewhat less critical" where the plaintiff
puts forth specific evidence of exposure to a defendant's
product. *See Tragarz,* 980 F.2d at 421. Similarly, under
*Tragarz,* the frequency and regularity prongs become "some-
what less cumbersome" in cases involving diseases that the
plaintiff's competent medical evidence indicates can develop
after only minor exposures to asbestos fibers. *See id.* at 420.

We agree with the *Tragarz* court's approach and adopt it
here. Further, we find that the bright-line distinction that
Appellee seeks to draw between direct and circumstantial
evidence cases is not warranted, because this distinction is
unrelated to the strength of the evidence and is too difficult to
apply, since most cases involve some combination of direct and
circumstantial evidence.[7]

7. For example, although Appellee describes *Eckenrod* as a case in
    which the plaintiff had adduced purely circumstantial evidence of

■ We recognize that it is common for plaintiffs to submit expert affidavits attesting that any exposure to asbestos, no matter how minimal, is a substantial contributing factor in asbestos disease. However, we share Judge Klein's perspective, as expressed in the *Summers* decision, that such generalized opinions do not suffice to create a jury question in a case where exposure to the defendant's product is *de minimus,* particularly in the absence of evidence excluding other possible sources of exposure (or in the face of evidence of substantial exposure from other sources). *See Summers,* 886 A.2d at 244; *accord Lindstrom,* 424 F.3d at 493 (reasoning that, if such an opinion were permitted to control, the substantial factor test would be rendered meaningless). As Judge Klein explained, one of the difficulties courts face in the mass tort cases arises on account of a willingness on the part of some experts to offer opinions that are not fairly grounded in a reasonable belief concerning the underlying facts and/or opinions that are not couched within accepted scientific methodology. It is worth noting that this phenomenon undisputedly occurred in this case with respect to the defendants sued under an occupational exposure theory. In this regard, Appellee's primary liability expert, Dr. Spector, initially asserted in his report that, based on a review of Mr. Gregg's history, there was an "occupational history of exposure to asbestos" that was the cause of his mesothelioma. Appellee's brief, on the other hand, relates that, in fact, there is no available evidence of any occupational exposure, *see* Brief for Appellee at 1–2, which is why the liability case has now centered on Appellant.

We appreciate the difficulties facing plaintiffs in this and similar settings, where they have unquestionably suffered harm on account of a disease having a long latency period and must bear a burden of proving specific causation under pre-

exposure, there was in fact direct testimony by co-workers that "Mr. Eckenrod was 'exposed to' asbestos products." *Eckenrod,* 375 Pa.Super. at 192, 544 A.2d at 52. Conversely, in the present case, Appellee concedes that the evidence concerning one essential aspect of his own causation proofs was entirely circumstantial. *See* Brief for Appellee at 11 ("The evidence that the brakes contained asbestos, *though circumstantial,* was powerful." (emphasis added)).

vailing Pennsylvania law which may be insurmountable. Other jurisdictions have considered alternate theories of liability to alleviate the burden. *See, e.g., Menne v. Celotex Corp.*, 861 F.2d 1453, 1464–70 (10th Cir.1988). *See generally* Comment, *The Threshold Level of Proof of Asbestos Causation: The "Frequency, Regularity and Proximity Test" and a Modified Summers v. Tice Theory of Burden–Shifting*, 24 CAP. U.L.REV. 735 (1995).[8] Such theories are not at issue in this case, however, and we do not believe that it is a viable solution to indulge in a fiction that each and every exposure to asbestos, no matter how minimal in relation to other exposures, implicates a fact issue concerning substantial-factor causation in every "direct-evidence" case. The result, in our view, is to subject defendants to full joint-and-several liability for injuries and fatalities in the absence of any reasonably developed scientific reasoning that would support the conclusion that the product sold by the defendant was a substantial factor in causing the harm.

■ In summary, we believe that it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury. We hold, therefore, that the common pleas court did not err in its decision to make this assessment. It remains to be determined on remand whether, in light of Appellee's evidence concerning the frequency, regularity, and proximity of Mr. Gregg's exposure to asbestos-containing products sold by Appellant, the common pleas court correctly determined that a jury issue was not present.

The order of the Superior Court is vacated, and the matter is remanded for further proceedings consistent with this opin-

8. Notably, under some of these theories, in recognition of the fact that a defendant may be held liable under less than substantial-factor causation, relief from joint and several liability may be available. *See Menne*, 861 F.2d at 1468 n. 22.

ion.  Appellee's Motion to Amend the Complaint is transferred to the intermediate appellate court, to be addressed in connection with the review on remand.

Jurisdiction is relinquished.

Justice CASTILLE, EAKIN and FITZGERALD join the opinion.

Chief Justice CAPPY files a dissenting opinion in which Justice BALDWIN joins.

Justice BAER files a dissenting opinion in which Justice BALDWIN joins.

Chief Justice CAPPY, dissenting.

Because I believe that the Majority's disposition of this matter is little more than a credibility determination, and thus improperly invades the province of the fact finder, I respectfully dissent.

It can be tempting for a court in a summary judgment matter to determine whether it finds a party's evidence persuasive.  Yet, the judiciary is forbidden from engaging in such an inquiry at the summary judgment phase.  Our function in a summary judgment matter is simply to "view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party."  *Mountain Village v. Bd. of Supervisors of Longswamp Twp.*, 582 Pa. 605, 874 A.2d 1, 5–6 (2005).  Credibility determinations are not properly made by a judge at summary judgment as credibility is an issue reserved to the fact finder.  *See Scalice v. Pennsylvania Employees Benefit Trust Fund*, 584 Pa. 161, 883 A.2d 429, 432 n. 5 (2005).

In the matter *sub judice*, the evidence when taken in the light most favorable to Appellee as nonmoving party establishes that Decedent was exposed to Appellant's asbestos laden product.  Furthermore, Appellee offered expert testimony that Decedent's mesothelioma was caused by occupational and nonoccupational exposure to asbestos, and that only the

barest amounts of asbestos can cause mesothelioma.[1] This evidence, taken in the light most favorable to Appellee as the nonmoving party, establishes that Decedent was exposed to asbestos via Appellant's product at levels sufficient to cause mesothelioma, the disease which killed Decedent. Clearly, such evidence presents a jury question as to causation for if Appellee's evidence were credited in its entirety, the jury could award relief to Appellee.

The Majority, however, concludes that this evidence does not present a jury question. The Majority does not come to this conclusion by finding that this evidence, when credited in its entirety, would fail to support a jury verdict for Appellee. Rather, it acknowledges the evidence as adduced by Appellee but then finds that not all of Appellee's evidence is worthy of belief. Specifically, the Majority regards the opinion offered by Appellee's scientific expert to be of suspect quality; the

---

1. In brief, Appellee claimed that Bendix brakes Decedent had purchased from Appellant contained asbestos fibers. In support of his claim, Appellee produced deposition testimony of two of the Decedent's children. Carolyn Morici ("Morici"), Decedent's daughter, stated that she bought Bendix brakes for Decedent at Appellant's store when she was a child. Deposition of Carolyn Morici at 37 and 39. Morici observed Decedent installing the brakes and that the procedure was dusty. *Id.* at 73. Appellee also recalled buying auto supplies for Decedent at Appellant's store and observing Decedent perform the dusty task of installing new brakes on the family's automobiles. Deposition of John Andrew Gregg at 93 and 124.

Appellee also adduced the testimony of Charles Schaefer ("Schaefer"), who was a neighbor of Decedent's in the 1950's and 1960's. Schaefer testified that he observed Decedent placing brake shoes in his cars and that the process was dusty. Deposition of Charles Schaefer at 39. Schaefer also testified that the Decedent, to his knowledge, bought his brakes only at V–J. Deposition of Charles Schaefer at 46.

Finally, Appellee produced a supplemental report by his medical expert which opined that all of Decedent's "asbestos exposures both occupational and non-occupational contributed to the development of his malignant mesothelioma." Supplemental Report of Harvey Spector, M.D., 8/20/2001, at 1. This supplemental report specifically noted that the expert had reviewed the Decedent's exposure to asbestos while installing brake linings on his automobile. *Id.* Another expert stated that "extremely low exposure levels are capable of producing mesothelioma and other malignancies. Both animal and human data exist that show as little as one day of exposure can lead to the development of mesothelioma...." Affidavit of Arthur L. Frank, M.D., dated November 5, 2002.

Majority apparently cannot square the scientific expert's opinion regarding the causation of asbestosis with the Majority's own views on how asbestosis is caused.[2]

This simply is not the function of summary judgment. Summary judgment is designed to winnow out those matters in which the evidence as adduced by the party bearing the burden of proof, even if that evidence is believed in its entirety, is insufficient to establish the cause of action. In such matters, summary judgment should enter since it is wholly unnecessary to progress to the fact finding crucible of trial. Summary judgment is not, however, the conduit by which the judiciary can make credibility determinations by fiat. Accordingly, I respectfully dissent.

Justice BALDWIN joins this dissenting opinion.

Justice BAER, dissenting.

Because I agree with Mr. Chief Justice Cappy's conclusion that the Majority is erroneously invading the province of the fact finder, I wholly join him and respectfully dissent. Further, I take issue with the Majority's discussion of expert testimony related to the quantum of exposure necessary for asbestos to become a substantial contributing factor in causing mesothelioma. I am particularly troubled by the majority's reference to Judge Klein's leading opinion in *Summers v. Certainteed Corp.*, 886 A.2d 240 (Pa.Super.2005) (equally divided court) (discussing the difficulties in assessing the credibility of expert testimony in an asbestos case) and the majority's observation that, "one of the difficulties courts face in the mass tort cases arises on account of a willingness on the part of some experts to offer opinions that are not fairly grounded in a reasonable belief concerning the underlying facts and/or

---

**2.** I would caution that a determination of whether a certain amount of a pollutant can bring about an illness is not arrived at via an application of pedestrian common sense. This court has recognized that for such questions, scientific expert testimony is required as "it is generally acknowledged that the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson." *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280, 1285 (1978).

opinions that are not couched within accepted scientific methodology." Maj. Op. at 291, 943 A.2d at 226.

It appears that the Majority, in expounding on what it labels as "Judge Klein's perspective," paints the entire spectrum of experts with a broad brush of quackery regarding the issuance of their respective opinions. Moreover, this approach suggests that the trial court is obligated to ferret out opinions of arguable scientific merit from those of a dubious nature, and everything in between, even where Appellant never challenged the methodology of Appellee's expert as being outside the accepted scientific methodology of asbestos cases and never requested a *Frye* hearing (to determine whether the general scientific community has reached a general acceptance of the principles and methodology employed by the expert witness before the trial court will allow the expert to testify regarding his conclusions).[1]

This case is before us on Appellant/Defendant's motion for summary judgment. Of course, we must consequently view the facts in the light most favorable to the Appellee/Plaintiff, who is the non-moving party. *See* Pa.R.Civ.P. 1035.2; *see also Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 812 A.2d 1218, 1221 (2002). Viewed in that light, we find that Appellee/Plaintiff has posited that, Dr. Harvey Specter, M.D., a board certified pathologist, confirmed Decedent's diagnosis of mesothelioma. In his supplemental report, Dr. Specter stated that Decedent's exposure to brake linings which contained asbestos substantially contributed to his malignant disease. Additionally, expert affidavits of Dr. James Girard, a chemist; Dr. Arthur Frank, an occupational disease physician; and, Dr. Richard Lemen, an epidemiologist and former deputy director of OSHA, concluded that it is generally accepted that

1. *See Frye v. United States*, 293 F. 1013 (D.C.Cir.1923) (setting forth an exclusionary rule of evidence that applies only when a party wishes to introduce novel scientific evidence obtained from the conclusions of an expert scientific witness). We first adopted the *Frye* test in *Commonwealth v. Topa*, 471 Pa. 223, 369 A.2d 1277 (1977) and more recently reaffirmed it in *Grady v. Frito–Lay*, 576 Pa. 546, 839 A.2d 1038 (2003), notwithstanding the United States Supreme Court's departure from *Frye* in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

relatively small amounts of asbestos exposure can cause meso-thelioma and that regular and frequent exposure need not occur to cause this form of cancer.

Relying on the *Tragarz* test,[2] the Majority has completely disregarded all of this proffered medical evidence. *Tragarz* held that when direct evidence of exposure to asbestos cannot be proven, a putative plaintiff must show frequent, regular, and proximate contact with asbestos to state a cause of action. Here, however, Appellee/Plaintiff does not need such circumstantial evidence as he has asserted a sufficient factual basis of direct exposure to overcome summary judgment. Hence, summary judgment should be denied and any challenge to the sufficiency of Appellee/Plaintiff's evidence should occur either at a *Frye* hearing, as discussed *supra*, or at trial, through the cross-examination of Appellee/Plaintiff's experts or presentation to a jury of opposing expert views.

Justice BALDWIN joins this dissenting opinion.

---

**2.** *Tragarz v. Keene Corp.*, 980 F.2d 411 (7th Cir.1992).