## Howard v. A.C. Chesterton Co.

*Robert Paul,* for plaintiffs.

*M. Douglas Eisler, John Bateman, Peter Neeson, Jennifer Stern,* and *Catherine Jasons,* for defendants.

TERESHKO, *J.,* March 23, 2011—Plaintiffs, Margaret Howard and Robert Howard ("plaintiffs"), executors of the estate of John C. Ravert ("decedent"), appeal this court's orders granting summary judgment to the following defendants: A.W. Chesterton, Co. ("Chesterton"), ACE Hardware Corp. ("ACE"), Monsey Products Corp. ("Monsey"), Pecora Corp. ("Pecora"), and Union Carbide Corp. ("Union Carbide") (collectively "defendants"), and dismissing with prejudice all claims against said defendants. For the following reasons, this court's orders

should be affirmed.

## I. BACKGROUND

Plaintiffs commenced this asbestos mass tort action alleging that decedent John C. Ravert contracted mesothelioma as a result of his occupational exposure to asbestos products. See plaintiffs' complaint, ¶13. On March 25, 2008, ACE, Chesterton, Monsey, and Pecora filed for summary judgment. On March 27, 2008, Union Carbide filed for summary judgment. On April 11, 2008, plaintiffs filed a response to each of the motions. Pecora replied on April 13, 2008. ACE, Chesterton, and Monsey replied on April 16, 2008. Union Carbide replied on April 18, 2008. Plaintiffs' counter replies were filed for Union Carbide on April 23, 2008; for Pecora on April 24, 2008; and for ACE, Chesterton, and Monsey on April 28, 2008. Replies to plaintiffs' counter replies were filed on April 28, 2008 by ACE (as a sur reply); April 30, 2008 by Monsey; and May 6, 2008 by Chesterton. All of defendants' motions asserted lack of sufficient product identification as required by *Ekenrod v. GAF Corp.*, 544 A.2d 50 (Pa. Super. 1988) and its progeny.

After careful review of the motions, responses, replies, and sur-reply, this court granted summary judgment in favor of each of the defendants and dismissed with prejudice plaintiffs' claims on May 14, 2008. The case was then removed by remaining defendants Weil McClain and Goodyear to the United States District Court for the Eastern District of Pennsylvania on May 20, 2008. On May 30, 2008, plaintiff timely filed appeals from the orders granting summary judgment to these defendants.

On July 1, 2008, in response to this court's order,

plaintiffs filed their concise statement of errors complained of on appeal pursuant to Pa.R.A.P. § 1925(b). This court issued its opinion August 6, 2008.

On October 1, 2009, the Pennsylvania Superior Court ruled that plaintiff's appeal was interlocutory because there were still two remaining defendants in the case; therefore the order was not a final, appealable order. By order dated November 12, 2009, the Honorable Eduardo Robreno remanded the case back to the trial court finding that the removal to federal court was improper because there were no grounds to invoke federal subject matter jurisdiction under 28 U.S.C. §1332.

On September 10, 2010, plaintiff settled with all remaining defendants prior to trial. Thereafter, plaintiff petitioned the Superior Court to reinstate the appeal initially filed May 30, 2008 (1731 EDA 2008). The Superior Court denied plaintiff's petition on reinstate the previous appeal, however plaintiff filed a new appeal on October 8, 2010 (2978 EDA 2010). Plaintiff filed a subsequent concise statement of errors complained of on appeal.

## II. DISCUSSION

Plaintiff argues that this court erred by granting summary judgment to defendants. The available record in the instant matter, however, failed to establish that Ravert inhaled asbestos fibers from products sold, manufactured or supplied by the moving defendants. Thus, summary judgment was appropriate.

"In determining whether to grant a motion for summary judgment, the trial court must view the record in the light most favorable to the non-moving party and resolve any

doubts as to the existence of a genuine issue of material fact against the moving party." *Gilbert v. Monsey Prods. Co.*, 861 A.2d 275, 276 (Pa. Super. 2004). In reviewing a grant of summary judgment, an appellate court's scope of review is plenary and will reverse only upon finding that the trial court abused its discretion or erred as a matter of law. *Harahan v. AC & S, Inc.*, 816 A.2d 296 (Pa. Super. 2003).

Our Superior Court, in *Eckenrod vs. GAF Corp.*, 544 A.2d 50 (Pa. Super. 1988), set forth the elements necessary to prove a prima facie case of asbestos liability:

> In order for liability to attach in a products liability action, plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier. Additionally, in order for a plaintiff to defeat a motion for summary judgment, a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product. Therefore, a plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use. Summary judgment is proper when the plaintiff has failed to establish that the defendants' products were the cause of the plaintiff's injury. *Id.* at 52 (internal citations omitted).

Further, our Supreme Court in *Gregg v. VJ Auto Parts, Co.*, 596 Pa. 274, 943 A.2d 216 (Pa. 2007), recently reiterated the duty of a lower court when reviewing an asbestos motion for summary based on product identification:

> ... [W]e believe that it is appropriate for courts, at the summary judgment stage, to make a reasoned

assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury. *Id.* at 30.

In light of this binding precedent, we review the record herein. Decedent, John Ravert was deposed by all defendants on June 25-27, 2007 and July 17-18, 2007. His deposition testimony fails to establish that decedent was exposed to asbestos fibers or asbestos dust shed from working with defendants' products with the frequency, regularity, and proximity required under Pennsylvania law.[1]

## *ACE*

Defendant ACE argued that the testimony of the decedent failed to establish that decedent was exposed to a respirable asbestos-containing product supplied by ACE. Decedent testified that he shopped at ACE stores frequently, for various items including nails, friction tape, thermometers, roof cement, and roof coat.[2] See deposition of John Ravert, 7/17/07, pp. 565-568. However, he also testified that he did not remember purchasing any asbestos products from any ACE Hardware store which contained any inhalable dust. See deposition of John Ravert, 7/18/07, p. 602.

Decedent remembers shopping in one ACE store in

---

1. The terms "dust" and "fibers" are used interchangeably as they are microscopic and cannot generally be seen with the naked eye.

2. Plaintiff maintains that only the roof coating and cement were asbestos-containing products.

Pennsylvania, located in the Summit Park Shopping Center on Henry Avenue in Roxborough. See *id.*, pp. 564-565 (Q: "...are there any other ACE Hardwares that you recall shopping at in Pennsylvania besides the one on Henry Avenue?" A: "No."). Likewise, decedent only remembers three ACE stores in Jacksonville, Florida. See *id.*, p. 566-567. Decedent does not recall shopping in any other ACE stores:

> Q: Any other ACE Hardwares that you recall ever shopping at besides the four we discussed today?
>
> A: No, but I imagine I have, but I can't picture it, you know.

See *id.*, pp. 567-568.

Decedent testified that he bought asbestos-containing roof coating and roof cement, but only at the Pennsylvania ACE location:

> Q: Sir, of the four ACE Hardware stores we discussed today, did you purchase any products that contained asbestos from any of those ACE Hardware stores?
>
> A: The ones here in Jacksonville, no.
>
> Q: Okay. And when you mentioned the one in Pennsylvania in Summit Park —
>
> A: Yeah, that one I did.

See *id.*, pp. 568-569.

When questioned about the two products, decedent testified that at no point when he used them were they in the form of a dust:

Q: When you were using the roof coat, was there any type of dust generated in that process?

A: Just cleaning the roof where you were going to put it down. You got that dust there.

Q: But no dust from the roof coat itself?

A: No. It was a liquid, now. I don't believe you can get dust from a liquid.

\*\*\*\*\*

Q: And was there any dust generated when you were using the roof cement?

A: No.

See deposition of John Ravert, 7/18/07, pp.605-606.

Now burdened with decedent's testimony which cannot support its claims, plaintiffs go on to engage in a deconstruction of this testimonial evidence and create an artificial record which attempts to dehor decedent's observation denying the existence of asbestos dust. They submitted seven exhibits along with their response to the motion for summary judgment alleging that roof cement products dried quickly enough so as to see asbestos dust. See plaintiff's response to the motion for summary judgment, p. 1. Plaintiffs also submitted several affidavits, pretrial examinations, and news articles in an attempt to support their claims that respirable fibers were present. See *id.*, exhibits B-G. However much of this information is irrelevant to this case in general and ACE specifically. The simple fact remains that plaintiffs' attempt to impeach decedent fails because decedent testified that he

never inhaled dust from ACE roofing materials. Clearly, plaintiffs cannot meet the *Ekenrod* test.

Thus, considering the foregoing, plaintiffs have failed to establish that decedent was exposed to any respirable asbestos fibers sold by ACE and summary judgment was proper.

### Chesterton

Similarly, Chesterton argued that plaintiffs' evidence failed to establish that decedent inhaled asbestos dust or fibers from a product manufactured by Chesterton. Decedent testified that the earliest he can remember using Chesterton products was during his employment with the Baldwin School. See deposition of John Ravert, 7/18/07, p. 571 (Q: "...the first time that you recall using a product that you knew to be Chesterton was at the Baldwin School; correct?" A: "Right."). Decedent further testifies that the only product that he associates with Chesterton is string packaging, although he did not read the packaging very closely.

Q: Okay, and the only product that you associate with Chesterton was the packing that you used there?

A: The string packaging.

*****

Q: And I think I believe you said that you really didn't read any writing on the packages other than just the word "Chesterton," correct?

A: Uh-huh.

Q: Okay. So —

A: Usually it was on a roll. It didn't have nothing on it. It was just sitting and you cut a piece off. Most of the writing was gone ad on the spindle you couldn't see any, you know, numbers. I looked at the number, seeing if it was a half inch or whatever.

See *id.*, p. 571,573.

Decedent further testified that, during the installation of any packing, regardless of the brand, there was no respirable dust from the product itself. See deposition of John Ravert, 6/28/08, p. 281 (Q: "There wasn't any dust created in that process; was there?" A: "No. There was dust from the people walking in the basement.").

Plaintiffs did not attempt to rebut any of the product identification testimony in decedent's deposition. Based on the evidence presented, plaintiffs cannot meet the *Ekenrod* test because of the lack of respirable dust. Thus, considering the foregoing, plaintiffs have failed to establish that decedent was exposed to any respirable asbestos fibers manufactured by Chesterton and summary judgment was proper.

### Monsey

Defendant alleged that plaintiffs failed to sufficiently identify a Monsey product which exposed decedent to a respirable asbestos-containing dust. Decedent testified that he used Monsey products on the roofs of Penn Fishing Tackle, Hamilton Court Apartments, and his mother's house. See deposition of John Ravert, pp. 491, 505.

Decedent also testified that none of the Monsey products that he remembered using gave off dust while he was applying them:

Q: Was there any dust involved in the application of either the cement or the coating?

A: They were a liquid, *they didn't have dust.* But cleaning off the roof, you know, the old dust from the tar paper.

Q: Was there any dust involved in the application of the tar paper?

A: No.

See *id.*, p. 502 (emphasis added).

Further, decedent was unable to identify the manufacturer of the roofing products that were already on the roof when he was making repairs:

Q: So then, you wouldn't be able to identify the manufacturer of the brand that you were ripping up; would that be correct?

A: Ripping up? You mean, what was down there, ripping it up?

Q: Yes.

A: No I wouldn't. Unless I put it down there, but I didn't, so. You might see a signature under there. When you're ripping something up, you don't look for names or anything.

See *id.*, p. 504.

Plaintiffs were unable to rebut any of the product identification testimony in decedent's deposition. Given that decedent said there was no dust and he could not identify the product, plaintiffs fail to establish the

frequency, regularity, and proximity requirements of *Ekenrod*. Thus, considering the foregoing, plaintiffs have failed to establish that decedent was exposed to any respirable asbestos fibers manufactured by Monsey and summary judgment was proper.

### Pecora

Defendant alleged that plaintiffs failed to sufficient identify a Pecora product which exposed decedent to a respirable asbestos-containing dust. Decedent testified that he used Pecora furnace cement during his employment at both Bee Fuel Company and the Baldwin School for Girls:

Q: ... Further down on the list you have 15, and it says "Pecora Furnace Cement." Do you see that?

A: That name I remember on the cement can.

Q: Here's the same picture. I have a copy of the picture here.

A: Pecora Furnace Cement.

Q: Okay, here's the picture.

A: Yeah, this I remember.

Q: Sir —

A: This was at the Baldwin School.

****

A: And it was also at Bee Fuel Company, this, the name, Pecora, at both places. And I can't tell you why. It's just —

\*\*\*\*\*

Q: Sir, do you recall the name Pecora at Bee Fuel; is that what you said?

A: Yes.

\*\*\*\*\*

A: And Baldwin School for Girls.

See deposition of John Ravert, 6/27/07, pp. 319-321.

Even though decedent remembered the Pecora products from two different locations, he testified that the Pecora furnace cement was not dusty:

Q: Sir, from the description of applying this product, either by hand or with a trowel, this would not be considered a dusty application; would it?

\*\*\*\*\*

A: Can you define what you mean by "dusty"?

Q: Do you understand my question, sir?

A: You just asked me if it was a dusty product.

Q: The application, putting this product onto the furnaces, that was not, in your mind, a dusty application; was it?

A: No, no.

See *id.*, pp. 333-334.

Decedent then explained that he did not actually use the Pecora furnace cement while employed at the Baldwin

School:

Q: Well, let me just clarify that, sir, and maybe I'm finished. At Baldwin, you remember seeing the product Pecora —

A: Yes, I do.

Q: But you did not actually use it when you —

A: It was inside the plumbing room.

Q: But you did not actually use that product when you were at Baldwin; correct?

A: No.

See *id.*, p. 335.

Plaintiffs were unable to rebut any of the product identification testimony in decedent's deposition. Thus, considering that the decedent testified as to the lack of dust, plaintiffs have failed to establish that decedent was exposed to any respirable asbestos fibers manufactured by Pecora and summary judgment was proper.

### Union Carbide

Defendant alleged that plaintiffs failed to sufficiently identify a Union Carbide product in existence at the time in which decedent claimed to have worked with it. Decedent testified that he was employed at the Bee Fuel Oil Company during a period from 1960-1961:

Q: What's your date of birth?

A: May 16, 1946.

\*\*\*\*\*

Q: And what was your first job, sir?

A: My first job was at Bee Fuel Oil Company.

*****

Q: How old were you?

A: I was fourteen.

*****

Q: What period of time did you work for Bee Fuel, sir?

A: Like I said, from fourteen almost until I was sixteen, almost.

See deposition of John Ravert, 7/18/07, pp. 11-12, 15.

Decedent further testified that he used Union Carbide asbestos only while employed at Bee Fuel:

A: No, if it was a bunch of letters or writing, I wouldn't bother with it. The words would be too big for me. There was a lot of writing on the bags, the manufacturer — that I remember, it said the manufacturer, but I never went passed that, who by. Union Carbide was on one of them; manufactured by Union Carbide.

Q: That was on the bag?

A: That was on the bag.

Q: Do you know what kind of product was in the bag? I mean, you said there was asbestos. I mean, did it have a name?

A: Asbestos.

Q: That's all it said? In other words, it didn't say "cement" or it didn't say —

A: No, I know the difference between cement and asbestos.

*****

Q: The Union Carbide bag that we just spoke about, those bags you recall from Bee Fuel Oil Company; is that correct?

A: Yes.

Q: Okay, and that's the only place you recall them from; is that correct?

A: Yes...

See deposition of John Ravert, 6/25/07, pp. 64-65.

Union Carbide argued that it was not possible for decedent to have used bags of asbestos during his tenure at Bee Fuel Oil Company because the product was not even manufactured until late 1963. See affidavit of John L. Myers, ¶3. Plaintiffs do not dispute this date; in fact they agree. See plaintiffs' response to defendant's motion for summary judgment, p. 1 ("... Union Carbide did make or distribute pastes and cements for high temperature uses in steel plants during 1963 when Ravert was at Bee Fuel"). However, according to decedent's testimony, the most recent date that he could have been employed at Bee Fuel was May of 1962. See deposition of John Ravert 7/18/07, pp. 11-12,15, supra. Plaintiff's tacit approval of defendant's assertion that Union Carbide did not manufacture the bags of asbestos that decedent remembers until 1963 is enough

to resolve doubt that there exists any material fact.

In light of the foregoing, plaintiffs were unable to rebut any of the product identification testimony in decedent's deposition. Thus, plaintiffs have failed to establish that decedent was exposed to any respirable asbestos fibers manufactured by Union Carbide and summary judgment was proper.

All other issues raised by plaintiffs in their statement of errors complained of on appeal are inapplicable to this appeal as they do not address the essential issue successfully argued by defendants' in their motions for summary judgment, that plaintiffs failed to prove lack of sufficient product identification as required by *Ekenrod.*

### III. CONCLUSION

For the foregoing reasons, this court's orders granting summary judgment in favor of defendants, ACE, Chesterton, Monsey, Pecora, and Union Carbide should be affirmed.