[J-12-2016] [MO: Donohue, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

| | | |
|---|---|---|
| RICHARD M. ROST, EXECUTOR OF THE ESTATE OF RICHARD J. ROST & ERIN SIPLEY, EXECUTRIX OF THE ESTATE OF JOYCE ROST, | : | No. 56 EAP 2014 |
| | : | |
| | : | Appeal from the Judgment of Superior |
| | : | Court entered on May 19, 2014 at No. |
| | : | 404 EDA 2012 affirming the Judgment |
| Appellees | : | entered on December 28, 2011 in the |
| | : | Court of Common Pleas, Civil Division, |
| | : | Philadelphia County at No. 1978 |
| v. | : | September Term, 2010. |
| | : | |
| | : | ARGUED: May 6, 2015 |
| FORD MOTOR COMPANY, | : | REARGUED: April 6, 2016 |
| | : | |
| Appellant | : | |

**DISSENTING OPINION**

**JUSTICE BAER**                                    **DECIDED:  November 22, 2016**

Pursuant to this Court's decisions in Gregg v. V-J Auto Parts, Co., 943 A.2d 216 (Pa. 2007), and Betz v. Pneumo Abex LLC, 44 A.3d 27 (Pa. 2012), I join the Chief Justice's analysis in his dissenting opinion, diverging only in regard to disposition. Rather than granting Ford Motor Company judgment notwithstanding the verdict, I would reverse and remand for new trial to allow the parties to apply this Court's decision in Betz, which issued after the trial in the case at bar.  I additionally write to address my prior dissenting opinion in Gregg.  For the following reasons, I respectfully dissent from my colleagues in the Majority, while joining the Chief Justice's dissenting opinion in part.

In Gregg, the plaintiff claimed that the asbestos he inhaled while changing the brakes on his personal automobile several times was a substantial factor in his development of mesothelioma, despite over forty years of professional exposure.  This

Court concluded that, in cases involving direct as well as circumstantial evidence of asbestos exposure, it is appropriate for a court to consider at the summary judgment stage "whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury." Id. at 227. In so doing, the Court concluded that it was not "a viable solution to indulge in a fiction that each and every exposure to asbestos, no matter how minimal in relation to other exposures, implicates a fact issue concerning substantial-factor causation in every 'direct-evidence' case." Id. at 226–27. The Court remanded to the Superior Court for application of the "frequency, regularity, and proximity" standard.

I dissented to what I viewed as that majority's unwarranted criticism of the experts' testimony at the summary judgment stage in a case involving direct evidence of asbestos exposure, and recommended that the proper challenge to the expert's "each and every exposure" theory should arise through a Frye challenge or through cross-examination of the expert at trial. Id. at 229-30 (citing Frye v. United States, 293 F. 1013 (D.C. Cir. 1923) (setting forth an exclusionary rule of evidence that applies only when a party wishes to introduce novel scientific evidence obtained from the conclusions of an expert scientific witness)). Notably, the majority of the Court concluded otherwise.

Five years later, this Court considered Betz v. Pneumo Abex LLC, 44 A.3d 27 (Pa. 2012). Engaging in the procedure lacking in Gregg, the defendant challenged the "each and every exposure" theory pursuant to Frye, and the trial court held an extensive hearing and ultimately excluded the evidence. This Court unanimously concluded that the trial court properly excluded the expert's testimony and further opined that the "each

and every exposure" theory could not serve as the basis for an expert's conclusion that the asbestos exposure was a substantial factor in causing the asbestos-related disease, in contrast to merely a cause-in-fact. Instead, the Court required a comparative assessment of the plaintiff's various exposures to asbestos. Id. at 56-58.

My colleagues in the Majority in the case at bar deem the discussion of comparative assessment in Betz to be *dicta*. Maj. Op. at 22. To the contrary, the comparative assessment analysis is the heart of the unanimous holding in Betz. Subsection D of the opinion addresses the "Any-Exposure Opinion," otherwise referenced as the "each and every exposure" theory. In the first paragraph of Subsection D, the Court agreed with the trial court that the "primary conceptual concern" with the plaintiff's theory was that if risk of mesothelioma attached to each asbestos fiber then each of the millions of asbestos fibers, to which a plaintiff had been exposed, would be a substantial factor in causing mesothelioma. Betz, 44 A.3d at 55. Each fiber cannot be a "substantial" factor in causing the disease if there are millions of similar factors. The unanimous court further relied upon the plaintiff's expert's testimony, in which he opined that one must consider the potency, concentration, and duration of asbestos exposure to "estimate the relative effects of different exposures." Id. at 56.

The Court's criticism of the each and every exposure theory of substantial causation hinged on recognition of the significance of comparative assessments:

> In this regard, the analogies offered by Dr. Maddox in support of his position convey that it is fundamentally inconsistent with both science and the governing standard for legal causation. The force of his marbles-in-a-glass illustration changes materially upon the recognition that, to visualize this scenario in terms of even a rough analogy, one must accept that the marbles must be non-uniform in size (as asbestos fibers are in size and potency), microscopic, and million-fold. From this frame of reference, it is very difficult to say that a single one of the smallest of

> microscopic marbles is a substantial factor in causing a
> glass of water to overflow.

Betz, 44 A.3d at 57. The Court continued, "Dr. Maddox's boxer analogy is as inconsistent with human experience as it is with science, as the difference between a glancing blow to the shoulder and a knockout punch to the jaw is commonly understood." Id. We, therefore, rejected the Superior Court's prior reliance on contrary language in Tragarz v. Keene Corp., 980 F.2d 411, 421 (7th Cir. 1992), and concluded that a comparative assessment of the plaintiff's exposures "is required for causal attribution" under Pennsylvania law. Betz, 44 A.3d at 58. Unlike this author's dissent in Gregg, the unanimous decision of the Court in Betz is precedent binding the current members of this Court, absent an explanation of why the legal principle of *stare decisis* should not be followed.

While the necessity of comparative assessment for purposes of substantial factor causation had been percolating in our prior decisions, see Gregg, 943 A.2d at 226-27, Betz clarified the requirement. The parties in the current case, however, did not have the benefit of Betz's dictates at trial. Accordingly, I would remand for new trial to allow the plaintiff the opportunity to present testimony in line with the requirements set forth in Betz.

Additionally, my colleagues dispute the role of the "frequency, regularity, and proximity" test adopted and applied in Gregg. I view the "frequency, regularity, and proximity" test as part of a comparative assessment of exposures, which is necessary to determine substantial factor causation sufficient to trigger a defendant's legal responsibility. Unlike many tort actions, latent disease cases cannot be demonstrated through a direct causal link but, instead, involve the imposition of liability based on an assessment of the increased risk resulting from the alleged exposures. Pursuant to Gregg, contact with asbestos cannot be deemed a substantial causal factor unless it

involved frequent, regular, and proximate exposure creating more than a *de minimis* risk of developing the disease. Once an exposure to asbestos fibers is determined to be sufficiently frequent, regular, and proximate, a fact-finder should consider factors such as the potency, concentration, and duration of the exposure in light of the plaintiff's other asbestos exposures to determine if it is reasonable to deem the defendant's product legally responsible as a substantial causal factor in the development of the disease, in contrast to merely being a cause-in-fact.

Notably, a jury may conclude that several products are substantial causes of a plaintiff's development of a disease. Indeed, a jury may find that Mr. Rost's three months of exposure to Ford brakes was a substantial cause of his mesothelioma, but under Betz, the plaintiff's expert must first provide the jury a comparative assessment of Mr. Rost's exposures to allow the jury to place the exposure to Ford products in context. Although the jury heard testimony regarding Mr. Rost's later exposures, Dr. Frank did not testify during direct examination to the details of Mr. Rost's asbestos exposure at Metropolitan Edison (MetEd) and other employers. Indeed, when asked during cross-examination about Mr. Rost's experiences at MetEd, Dr. Frank repeatedly testified that he did not "know specifically what Mr. Rost did" and could not "speak to what his level of exposure was." N.T., Sept. 19, 2011 P.M. Session, at 20-22, R.R. 1406a-08a. Given that Dr. Frank was not aware of the specifics of Mr. Rost's work history, he was unable to provide the jury with the required comparative assessment of exposures. Accordingly, as discussed above, I would remand for a new trial to allow the plaintiff the opportunity to present the necessary testimony.[1]

---

[1] As I would remand for a new trial, I need not address the potential prejudice of the consolidation of this case with other asbestos cases, a procedure which is no longer practiced in the Court of Common Pleas of Philadelphia.