78 A.3d 605

Margaret HOWARD and Robert Howard, Co–Executors of the ESTATE OF John C. RAVERT, Deceased

v.

A.W. CHESTERTON CO., Ace Hardware Corp., Monsey Products Corp., Pecora Corp. and Union Carbide Corp.

Appeal of: Monsey Products Corporation.

Margaret Howard and Robert Howard, Co–Executors of the Estate of John C. Ravert, Deceased

v.

A.W. Chesterton Co., Ace Hardware Corp., Monsey Products Corp., Pecora Corp. and Union Carbide Corp.

Appeal of: Ace Hardware Corporation.

Margaret Howard and Robert Howard, Co–Executors of the Estate of John C. Ravert, Deceased

v.

A.W. Chesterton Co., Ace Hardware Corp., Monsey Products Corp., Pecora Corp. and Union Carbide Corp.

Appeal of: Pecora Corporation.

Supreme Court of Pennsylvania.

Argued March 6, 2013.

Decided Sept. 26, 2013.

Dorothy Alicia Hickok, Esq., Kenneth A. Murphy, Esq., Alfred W. Putnam Jr., Esq., Drinker, Biddle & Reath, LLP, Philadelphia, Deborah J. La Fetra, Esq., Chance D. Weldon, Esq., for Pacific Legal Foundation, Amicus Curiae.

David P. Helwig, Esq., Marks, O'Niell, O'Brien & Courtney, P.C., Pittsburgh, Kevin J. O'Brien, Esq., Jennifer Agnes Stern, Esq., Marks, O'Niell, O'Brien & Courtney, P.C., Philadelphia, for Pecora Corporation.

James Michael Beck, Esq., for Product Liability Advisory Council, Inc., Amicus Curiae.

James Michael Beck, Esq., for Product Liability Advisory Council, Inc., Amicus Curiae.

Patrick Joseph Hughes, Esq., Martin S. Kaufman, Esq., for Richard Wilson, et al., Amicus Curiae.

Sean Peter Wajert, Esq., Shook Hardy & Bacon, LLP, for Insurance Federation of PA, Inc., Coalition for Litigation Justice, Inc., American Chemistry Council, PA Chamber of Business & Industry, PA Business Council, NFIB/Pennsylvania, Amicus Curiae.

Hugh F. Young, Esq., for Product Liability Advisory Council, Inc., Amicus Curiae.

John Joseph Bateman, Esq., Lavin, O'Niel, Ricci, Cedrone & DiSipio, Philadelphia, for Ace Hardware Corp.

Mark Douglas Eisler, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker, L.L.P., Los Angeles, for A.W. Chesterton Company.

Catherine Nancy Jasons, Esq., Kelley, Jasons, McGowan, Spinelli & Hanna, LLP, Philadelphia, for Union Carbide Corporation.

Richard P. Myers, Esq., Robert E. Paul, Paul, Reich & Myers, P.C., Philadelphia, for Margaret Howard and Robert Howard.

Peter J. Neeson, Esq., Rawle & Henderson, LLP, Philadelphia, for Monsey Products Corp.

Hugh F. Young, Esq., for Product Liability Advisory Council, Inc., Amicus Curiae.

John Joseph Bateman, Esq., Lavin, O'Niel, Ricci, Cedrone & DiSipio, Philadelphia, for Ace Hardware Corp.

Mark Douglas Eisler, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker, L.L.P., Los Angeles, for A.W. Chesterton Company.

Catherine Nancy Jasons, Esq., Kelley, Jasons, McGowan, Spinelli & Hanna, LLP, Philadelphia, for Union Carbide Corporation.

Richard P. Myers, Esq., Robert E. Paul, Paul, Reich & Myers, P.C., Philadelphia, for Margaret Howard and Robert Howard.

Peter J. Neeson, Esq., Rawle & Henderson, LLP, Philadelphia, for Monsey Products Corp.

Before CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, MCCAFFERY, ORIE MELVIN, JJ.

## *ORDER*

PER CURIAM.

This asbestos-litigation appeal is being resolved upon mutual consent among the parties, who agree that the order of the Superior Court should be reversed.

Appellants were manufacturers or distributors of asbestos-containing products and are defendants in litigation initiated by John C. Ravert and later pursued by Appellees as co-executors of Mr. Ravert's estate. Mr. Ravert and Appellees contended that his exposure to Appellants' asbestos-containing products caused mesothelioma.

The common pleas court awarded summary judgment in favor of Appellants, reasoning that Mr. Ravert's deposition testimony failed to establish that he breathed asbestos-containing dust from the products manufactured or distributed by Appellants.[1] The court also found expert affidavits submitted by Appellees represented "an artificial record which attempts to dehor [Mr. Ravert's] observation denying the existence of asbestos dust."

On appeal, the Superior Court reversed on the basis that dust may have been invisible to the naked eye, and the expert affidavits were sufficient to establish a material issue of fact as to whether dust emanating from products associated with Appellants was a substantial factor in causing Mr. Ravert's mesothelioma. *See Howard v. A.W. Chesterton Co.*, 31 A.3d 974, 981, 983 (Pa.Super.2011). The court also reasoned that a plaintiff bears a diminished burden of meeting a frequency, regularity, and proximity threshold of exposure in cases of mesothelioma, since the disease may be caused by limited exposure to asbestos. *See id.* at 979.

■ Presently, Appellees "concede that the factual record fails to demonstrate regular and frequent enough exposures during which respirable asbestos fibers were shed by [Appel-

1. For example, the court highlighted that some of the products were used by Mr. Ravert solely in their liquid form.

lants'] asbestos-containing products to defeat summary judgment." Brief for Appellees at 10. Furthermore, Appellees:

> recognize that this Court will not allow Plaintiffs to prove that a plaintiff's exposure to a particular asbestos-containing product is substantially causative of disease by the use of affidavits in which the expert's methodology is founded upon a belief that every single fiber of asbestos is causative. In *Gregg* [*v. V–J Auto Parts, Inc.*, 596 Pa. 274, 943 A.2d 216 (2007) ], this Court articulated that the usage of a particular product had to be substantial enough when measured against the totality of the exposures, that the particular product usage was substantial enough to be a factual cause of the disease.... The test for adequacy is the comparison of the particular product exposure(s) to the totality of the person's asbestos exposures.

Brief for Appellees at 16.

Upon Appellees' concession, the opinion of the Superior Court will be vacated and its order reversed. Appellant Monsey Products Company—in view of its status as a defendant in other cases and the time and expense of this litigation—asks this Court to reaffirm several governing principles deriving from prior cases. In most respects, these precepts are now well established, and they are relevant to the appropriate disposition of the present case. Accordingly, we are able substantially to accommodate this request. Hence, we reaffirm the following:

■ —The theory that each and every exposure, no matter how small, is substantially causative of disease may not be relied upon as a basis to establish substantial-factor causation for diseases that are dose-responsive. *See Betz v. Pneumo Abex, LLC*, 615 Pa. 504, 44 A.3d 27, 55–58 (2012).

■ —Relatedly, in cases involving dose-responsive diseases, expert witnesses may not ignore or refuse to consider dose as a factor in their opinions. *See id.*

■ —Bare proof of some *de minimus* exposure to a defendant's product is insufficient to establish substantial-

factor causation for dose-responsive diseases. *See Gregg v. V–J Auto Parts, Inc.*, 596 Pa. 274, 943 A.2d 216, 225–26 (2007).

■ —Relative to the testimony of an expert witness addressing substantial-factor causation in a dose-responsive disease case, some reasoned, individualized assessment of a plaintiff's or decedent's exposure history is necessary. *See Betz*, 44 A.3d at 55–58.

■ —Summary judgment is an available vehicle to address cases in which only bare *de minimus* exposure can be demonstrated and where the basis for the experts testimony concerning substantial-factor causation is the any-exposure theory. *See Betz*, 44 A.3d at 55–58; *Gregg*, 943 A.2d at 227.

■ —The content of expert discovery is specified in the Pennsylvania Rules of Civil Procedure, as may be supplemented by particular directives by courts of original jurisdiction.[2]

In her concurring statement, Madame Justice Todd appears to oppose any explanation whatsoever relative to this Order, suggesting that supporting reasons are irrelevant in light of a concession on the merits. *See* Concurring Statement, *op.* at 351, 78 A.3d at 610 ("Appellees' evidentiary concession is the end of the matter[.]"). The concurrence couches the legal precepts which we have set forth above as "unadorned" and "unmoored" from any factual context, while chastising us for violating the axiom that the holding of any case is to be read against its facts. *See id.* at 351–52, 78 A.3d at 609–11. The concurring statement also discusses the limited effect of a *per*

2. Here, Monsey seeks a particular admonition that expert reports in asbestos cases must contain a discussion of the methodology supporting the expert opinion. There are enough nuances pertaining to this subject that we are unable to make such a general pronouncement here. We recognize, however, that per Rule of Civil Procedure 4003.5(a)(1)(b), a party through interrogatories may require the other party to have identified trial experts state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. *See* Pa.R.Civ.P. No. 4003.5(a)(1)(b). The rules also provide latitude for the court of original jurisdiction to order further discovery by other means, subject to specified conditions. *See id.* No. 4003.5(a)(2).

*curiam* order and questions the benefit of explanations provided in them. *See id.* at 351–52, 78 A.3d at 610–11.

■ Responsively, we observe that this case was accepted for review on our discretionary docket, briefed, and argued, and we have never understood a party's merits concession to foreclose the Court's ability to explicate the ultimate disposition. Furthermore, the relevance of our discussion to the present case is plain and straightforward.

As we have explained, Appellees have related that they read and understood the decisions in *Gregg* and *Betz* to mean what these decisions say—namely, that "this Court will not allow Plaintiffs to prove that a plaintiff's exposure to a particular asbestos-containing product is substantially causative of [an individual plaintiff's particular] disease by the use of affidavits in which the expert's methodology is founded upon a belief that every single fiber of asbestos is causative." Brief for Appellees at 16. The main points we have delineated above represent nothing more than a modest elaboration upon this very reasoning supplied by the Appellees themselves in support of their controlling concession. As such, it is difficult to appreciate what additional "adornment" or "mooring" is contemplated by the concurrence.

Certainly, we do not suggest that a *per curiam* order has any effect beyond that represented in Justice Todd's responsive opinion. Nevertheless, in light of the intensely protracted nature of this and other asbestos litigation, as well as our own limited resources, we have acceded to Appellants' reasonable request to provide whatever limited guidance we were able to supply under the circumstances. Notably, Justice Todd does not substantively question any of the now unremarkable propositions indicated above.[3] Indeed, as explained in detail in the unanimous decision in *Betz*, the any-exposure opinion is simply unsupportable both as a matter law and science. *See Betz*, 44 A.3d at 55–58. Our present effort to highlight this proposition while applying it in a case in which it is conceded to be dispositive, we believe, may be of some benefit to Pennsylva-

3. In light of the now settled nature of the above, controlling principles, it is difficult to credit Justice Todd's prediction that they are susceptible to "summary rejection" in a future opinion. Concurring Statement at 353, 78 A.3d at 611.

nia litigants, in terms of crystallizing the essential burdens of proof.

The opinion of the Superior Court is VACATED, its order is REVERSED, and the case is remanded for reinstatement of the order of the common pleas court.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN, BAER and McCAFFERY join the per curiam order.

Justice TODD files a concurring statement.

Justice TODD, concurring.

I agree with my colleagues that, upon Appellees' evidentiary concession, the opinion of the Superior Court must be reversed. Respectfully, however, in my view, the Court should have stopped there; instead, the Court proceeds to "reaffirm" a series of unadorned holdings, simultaneously asserting they are "well established," but nonetheless re-expressing them. I cannot join this seriatim *dicta,* and so concur only in the result.

First, although the Court contends that these "governing principles" are "relevant to the appropriate disposition of the present case," *Per Curiam* Order, ante at 348, 78 A.3d at 608, I cannot agree. Given the record before us, the parties agree that the Superior Court's opinion should be reversed, and this Court concurs. Appellees' evidentiary concession is the end of the matter, as it fully supports our summary reversal, and, indeed, the Court does not explain how the expressed principles are relevant to our disposition. In my view, these seriatim holdings are unmistakable *obiter dicta.*

The Court's approach suffers from an additional infirmity. We have often repeated the axiom that judicial decisions are to be read against their facts, so as to prevent "the wooden application of abstract principles to circumstances in which different considerations may pertain." *Maloney v. Valley Med. Facilities, Inc.,* 603 Pa. 399, 411, 984 A.2d 478, 485–86 (2009). That axiom recognizes that decisional law develops

incrementally, and that, given the tension between the narrow focus on the facts of a given case and the concomitant need to provide broader guidance on the legal issues at play, "we aspire to embrace precision and avoid 'the possibility that words or phrases or sentences may be taken out of context and treated as doctrines.'" *Scampone v. Highland Park Care Ctr., LLC,* 618 Pa. 363, 57 A.3d 582, 604–05 (2012) (quoting *Maloney,* 603 Pa. at 418, 984 A.2d at 490); *see also Oliver v. City of Pittsburgh,* 608 Pa. 386, 395, 11 A.3d 960, 966 (2011) ("[T]he fact that some decisions of the Court apply loose language cannot mean that the Court must always do so going forward, as this would institutionalize an untenable slippage in the law. Indeed, various principles governing judicial review protect against such slippage, including the axiom that the holding of a judicial decision is to be read against its facts." (citations omitted)). Yet, the Court today disregards its own admonitions by issuing seriatim holdings entirely out of context, stripping future litigants and courts of the ability to interpret these holdings against any operative facts.

Moreover, the Court's well-meaning attempt to "accommodate" Appellants' request to reaffirm several precepts is to little avail in the end: as these statements are *dicta,* courts, including this one, are under no obligation to follow such dictates. *See, e.g., Rendell v. Pennsylvania State Ethics Comm'n,* 603 Pa. 292, 302, 983 A.2d 708, 714 (2009) (statements from prior decision which were "unnecessary to the resolution of the controversy" were nonbinding *dicta* that "left open the question" for Court's analysis). Relatedly, we have in the past dismissed assertions made in the context of *per curiam* dispositions as lacking "an in-depth analysis of the reasoning employed" in the referenced decisions. *See, e.g., Rendell,* 603 Pa. at 303, 983 A.2d at 714 (in dismissing binding effect of summary analysis in prior *per curiam* order, noting, *inter alia,* lack of in-depth analysis); *see also U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship,* 513 U.S. 18, 24, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) ("This seems to us a prime occasion for invoking our customary refusal to be bound by dicta, and our customary skepticism toward *per curiam* dispositions that lack the reasoned consideration of a full opinion."

(citations omitted)). I cannot see how the Court's seriatim holdings herein would avoid a similar summary rejection in a future decision.

Finally, on the "merits" of these holdings, the Court repeatedly cites to *Betz v. Pneumo Abex, LLC*, 615 Pa. 504, 44 A.3d 27 (2012). Yet, the Court does not note or address Appellees' contention that Appellants' failed to preserve a challenge under Betz because Appellants did not request a hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). Whatever the correctness of Appellees' claim, it casts doubt on the Court's contention that its seriatim holdings are both necessary to the disposition of this case and unremarkable.

I understand the Court's concern for Appellants, as they have spent considerable time and expense on this litigation, only to have Appellees issue a decisive concession at the last moment, and one which presumably could have been issued long ago. Nevertheless, with all due respect to the litigants that come before this Court, such effort is not justification, in and of itself, for this Court to issue proclamations. That is particularly true when those proclamations are unnecessary to our disposition, and are unmoored from any factual context.