J-A05039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GEORGE C. AND PAMELA M. GUTSCHALL, H/W, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| METROPOLITAN EDISON COMPANY AND PENNSYLVANIA POWER & LIGHT CO., A/K/A PPL CORPORATION, | |
| Appellees | No. 1973 EDA 2014 |

Appeal from the Order Entered May 23, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): November Term, 2012 No. 927

BEFORE:  GANTMAN, P.J., SHOGAN, and ALLEN, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 01, 2015**

Appellants George C. Gutschall and Pamela M. Gutschall, husband and wife, appeal from the order granting summary judgment in favor of Appellee Metropolitan Edison Company ("MetEd").[1]  We affirm.

On November 9, 2012, Appellants commenced suit against several defendants contending that Mr. Gutschall contracted lung cancer as a result of being exposed to asbestos at various sites.  With regard to MetEd,

_____

[1] Appellants filed a notice of appeal from the orders granting summary judgment in favor of MetEd and Pennsylvania Power & Light Company ("PP&L").  Notice of appeal, 6/27/14.  Appellants subsequently petitioned to discontinue the suit against PP&L only, and on November 10, 2014, this Court granted that petition.  As a result, the appeal before us involves only the summary judgment order entered in favor of MetEd.

Appellants contend that Mr. Gutschall was exposed to asbestos while working as a boilermaker at MetEd's facilities located at Three Mile Island, Portland and Titus.

MetEd and PP&L filed motions for summary judgment and Appellants filed answers to those motions. By orders dated May 23, 2014, the trial court granted summary judgment in favor of MetEd and PP&L. On June 3, 2014, the case settled as to all remaining defendants.

On June 27, 2014, Appellants filed a notice of appeal from the orders granting summary judgment in favor of MetEd and PP&L. On July 1, 2014, the trial court issued two orders, one for each order appealed from, directing Appellants to file a separate Pa.R.A.P. 1925(b) statement for each order. On July 22, 2014, Appellants filed a single Pa.R.A.P. 1925(b) statement, with no clear delineation of the matters complained of as to each Appellee. The trial court prepared a Pa.R.A.P. 1925(a) opinion and in it described the Pa.R.A.P. 1925(b) statement as follows: "Appellants' Statement is five pages long, contains forty four paragraphs, plus subparts and exhibits, and is vague, rambling and overbroad." Trial Court Opinion, 8/12/14, at 2.

Appellants present the following issues for our review:

I.    Did the lower court err by inferring, contrary to the evidence of record, that MetEd did not retain control of its premises during repairs for which Mr. Gutschall was working on the premises for independent contractors?

II.   Did the lower court err when it inferred that Plaintiff had not demonstrated MetEd's superior knowledge of the hazards of asbestos?

III. Did the lower court err when it inferred that Mr. Gutschall did not prove exposure to asbestos while on MetEd's premises?

IV. Should the lower court's suggestion that that Plaintiffs' appeal should be waived for failure to comply with Pa.R.A.P. 1925(b)?

Appellants' Brief at 4 (verbatim).

We must first address Appellants' last issue in order to determine whether the issues have been properly preserved for our review. *See* *Commonwealth v. Wholaver*, 903 A.2d 1178, 1184 (Pa. 2006) (holding appellate courts may *sua sponte* determine whether issues have been properly preserved on appeal). As this Court has noted, the fact that a Pa.R.A.P. 1925(b) statement is timely filed does not automatically equate to issue preservation. *Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 210 (Pa. Super. 2008). "[T]he Pa.R.A.P.1925(b) statement must be sufficiently 'concise' and 'coherent' such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith." *Id.*

In attempting to address the claims raised in Appellants' Pa.R.A.P. 1925(b) statement, the trial court concluded that Appellants had "waived their right to appeal due to their failure to file a concise and coherent Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b)." Trial Court Opinion, 8/12/14, at 3. The trial court also concluded that Appellants had acted in bad faith in filing their Pa.R.A.P. 1925(b)

statement. ***Id.*** at 6. In support of this conclusion, the trial court aptly

summarized the law in this area when it provided the following explanation:

> Appellants' Statement is not merely the result of inartful drafting, but is clearly an attempt to overwhelm the trial court by asserting a multitude of issues which Appellants do not wish to raise and/or cannot raise on appeal, including the issue of whether [the trial court] erred in issuing [an order dated April 7, 2014], which is not properly before the Superior Court because it was never appealed. The Pennsylvania Supreme Court has determined that in a rare case, where a trial court concludes there was an attempt to thwart the appellate process by including an exceptionally large number[] of issues in a Rule 1925(b) statement, waiver may result. Eiser v. Brown & Williamson Tobacco Corporation, 938 A.2d 417, 428 (Pa. 2007). When a trial court finds an appellant has acted in bad faith in filing a 1925(b) statement, appellant's conduct constitutes a violation of Rule 1925(b). Id. at 421. In the instant matter, [the trial court] finds that Appellants acted in bad faith in filing their Statement of Matters Complained of on Appeal, and intended to deliberately circumvent the meaning and purpose of Rule 1925(b). Therefore, pursuant to Pa.R.A.P. 1925(b) and [case law], Appellants have waived their right to appeal.

***Id.***

Furthermore, Pa.R.A.P. 1925(b)(4) addresses the requirements of the

statement, and the possibility of waiver. Specifically, it provides, in relevant

part, as follows: "The Statement should not be redundant or provide

lengthy explanations as to any error. Where nonredundant, non-frivolous

issues are set forth in an appropriately concise manner, the number of errors

raised will not alone be grounds for finding waiver." Pa.R.A.P.

1925(b)(4)(iv); ***Jiricko***, 947 A.2d at 211 n. 8, 213 (holding that it was not

merely the fact the Pa.R.A.P. 1925(b) statement was lengthy; but rather,

the fact that appellant's statement was redundant, confusing, and at times incoherent which required waiver).

In the case *sub judice*, as noted, Appellants were directed to file a Pa.R.A.P. 1925(b) statement for each order granting summary judgment to each Appellee. Orders, 7/1/14; Corrective Order, 7/2/14. In contravention of the trial court's orders, Appellants filed a single Pa.R.A.P. 1925(b) statement.

Moreover, a review of the content of the statement reveals significant failure to comply with the dictates and purpose of Pa.R.A.P. 1925(b). Appellants' statement is five pages long and consists of forty-four paragraphs. Plaintiff's Pa.R.A.P. 1925(b) Statement, 7/22/14, at 1-5. Multiple paragraphs include more than one allegation. *Id.* Two of the paragraphs include four subparts. *Id.* at 4-5. Appellants make broad allegations regarding MetEd's liability. *Id.* at 1-5. The statement is vague, rambling, redundant and largely incoherent. *Id.* Having reviewed Appellants' Pa.R.A.P. 1925(b) statement, we can appreciate the trial court's frustration and difficulty in attempting to craft a response.

We agree with the trial court's conclusion that Appellants' Pa.R.A.P. 1925(b) statement is not written in a concise or coherent manner. The statement did not concisely identify for the trial court the issues to be raised on appeal. Not only was the statement lengthy, but it was also redundant, confusing and incoherent. Additionally, we conclude that the trial court's

finding that Appellants acted in bad faith in filing this Pa.R.A.P. 1925(b) statement is supported by the evidence of record. The lengthy, redundant, and often incoherent Pa.R.A.P. 1925(b) statement could be viewed as Appellants' attempt to overwhelm the trial court and thwart the appellate process. Furthermore, Appellants' decision to utterly disregard the trial court's dictate to file a separate Pa.R.A.P. 1925(b) statement for each Appellee and order also supports that conclusion. Because the record supports the trial court's determination that Appellants deliberately circumvented the meaning and purpose of Rule 1925(b) and acted in bad faith, we conclude that the trial court properly determined that Appellants' issues are waived.

However, assuming *arguendo* that Appellants' issues raised on appeal were not waived, we would find that Appellants' remaining issues lack merit and provide no basis for relief. Appellants' remaining three claims challenge the trial court's entry of summary judgment in favor of MetEd. An order granting summary judgment is subject to the following scope and standard of appellate review:

> Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving

party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

**Shepard v. Temple University**, 948 A.2d 852, 856 (Pa. Super. 2008) (quoting **Murphy v. Duquesne University**, 777 A.2d 418, 429 (Pa. 2001)).

Appellants first argue that the trial court erred by "inferring" that MetEd did not retain control of its premises during the repairs being conducted by Mr. Gutschall and his employer. Appellants' Brief at 12. Appellants contend that there is a genuine issue of material fact in this case as to whether the landowner, here MetEd, retained sufficient control to make it liable for injuries to a business invitee, and in support of that contention, cite **Beil v. Telesis Constr., Inc.**, 11 A.3d 456, 467 (Pa. 2011). **Id.** Appellants assert that they have presented evidence that MetEd retained control of the Three Mile Island plant during the years that Mr. Gutschall worked there. **Id.** at 13. In support of this contention, Appellants assert that while Mr. Gutschall worked there, "there were MetEd employees around where he was working." **Id.** at 13-14. Additionally, Appellants rely on what they describe as MetEd's "judicial admission" in a previously decided case,

*Rudy v. A-Best Products Co.*, 870 A.2d 330 (Pa. Super. 2005),[2] that "at all pertinent times [from 1969-1980] only MetEd was in possession of the [Three Mile Island] power station." *Id.* at 14.

To the extent that Appellants are attempting to establish the application of the "retained control exception," as set forth in *Beil v. Telesis Constr., Inc.*, 11 A.3d 456 (Pa. 2011),[3] any such claim is waived. Appellants failed to raise this claim in their response to MetEd's motion for summary judgment. Furthermore, despite Appellants' assertion, the trial court made no determination on the "retained control exception," most certainly due to Appellants' failure to raise it. To the extent that Appellants' argument pertains to possession of the land in the context of the "superior knowledge exception" to premises liability, we shall address that claim in our discussion of Appellants' second issue.

Appellants next argue that the trial court erred when it "inferred that [Appellants] had not demonstrated the premises owner's superior knowledge

---

[2] We note that *Rudy* also involved MetEd as the defendant and the subject property was Three Mile Island.

[3] "For over 100 years, the accepted and general rule regarding liability in our Commonwealth has been that a landowner who engages an independent contractor is not responsible for the acts or omissions of such independent contractor or his employees." *Beil*, 11 A.3d at 466. Section 414 of the Restatement (Second) of Torts, which has been adopted in Pennsylvania, sets forth one such exception to the general rule, the "retained control exception," by imposing liability on the premises owner when the owner retains control over the manner in which the work is done. *Id.*

of the hazards of asbestos." Appellants' Brief at 16. Appellants aver that the trial court improperly concluded that Mr. Gutschall and the Boilermakers' Union knew of the hazards of asbestos exposure starting in 1969, the year in which Mr. Gutschall first did boiler-making work. *Id.* Appellants argue that MetEd failed to proffer evidence as to what year Mr. Gutschall acquired this knowledge and how such knowledge had been disseminated to union and non-union permit workers. *Id.* at 20. Appellants also contend that the trial court erred in concluding that Appellants did not proffer an expert opinion on MetEd's knowledge of the hazards of asbestos. *Id.* at 22. Appellants argue that the report from their expert, Arthur Frank, M.D., Ph.D., and other documentary evidence established that MetEd knew of the asbestos hazards years before Mr. Gutschall began working on the premises. *Id.*

In the case *sub judice*, because Appellants predicate their allegations of negligence on MetEd's status as a landowner, their claims against MetEd cannot be analyzed under the standard set forth in *Eckenrod v. GAF Corp.*, 544 A.2d 50, 52 (Pa. Super. 1988), for the resolution of strict liability claims against an asbestos manufacturer. *Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 654 (Pa. Super. 2002). To recover damages in a negligence action, as opposed to obtaining recovery on a strict liability asbestos claim, a plaintiff must establish that a particular defendant's negligence was the proximate cause of his or her injuries. *Id.*

In order for premises liability to attach, Appellants must first establish that the defendant was in fact possessor of the site. *Rudy*, 870 A.2d at 333; Restatement (2d) of Torts, § 328E. In the case *sub judice*, MetEd admits that it was sole possessor of the land. MetEd's Brief at 21.[4]

The standard of care a possessor of land owes to one who enters upon the land depends upon whether the latter is a trespasser, licensee, or invitee. *Gutteridge*, 804 A.2d at 655. Employees of independent contractors are "invitees" who fall within the classification of "business visitors." *Id.* The duty of care owed to a business invitee (or business visitor) is the highest duty owed to any entrant upon land. *Id.* at 656. Our case law sets forth the duty that a possessor of land owes to business invitees as follows:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

---

[4] As noted in Appellants' argument on their first issue, Appellants appear to confuse a landowner's possession of property with the control a landowner exercises over an independent contractor as related to the "retained control exception." The fact that MetEd possessed the land, however, is not the same as establishing that MetEd was liable based on the "retained control exception."

(c) fails to exercise reasonable care to protect them against the danger.

Pennsylvania law imposes no general duty on property owners to prepare and maintain a safe building for the benefit of a contractor's employees who are working on that building. Rather, our law generally insulates property owners from liability for the negligence of independent contractors and places responsibility for the protection of the contractor's employees on the contractor and the employees themselves. Nevertheless, . . . a landowner must protect an invitee not only against known dangers, but also against those which might be discovered with reasonable care. Additionally, certain exceptions exist to the general rule that otherwise would limit the property owner's liability.

*Gutteridge*, 804 A.2d at 656 (internal citations omitted).

During the times that Mr. Gutschall was on MetEd's premises, he was employed by independent contractors. As such, Mr. Gutschall was an "invitee." Accordingly, MetEd should be insulated from liability for injuries caused to Mr. Gutschall through any negligence of its independent contractors.

Appellants, however, contend that MetEd is liable under the "superior knowledge" exception to this general rule regarding premises liability. *Gutteridge* provides the following guidance on this exception:

[T]he employer of an independent contractor has no duty to warn either the contractor or his employees of a condition that is at least as obvious to them as it is to him. The question of whether a landowner owes a duty to warn an independent contractor of dangerous conditions on the premises turns on whether the owner possesses "superior knowledge" or information which places him in a better position to appreciate the risk posed to the contractor or his employees by the dangerous conditions.

- 11 -

***Gutteridge***, 804 A.2d at 657-658.

In considering the evidence of record in the context of the "superior knowledge" exception, the trial court concluded:

> In the instant matter, the record shows that Mr. Gutschall worked for independent contractors on [MetEd's] premises as an experienced union boilermaker who had substantial knowledge of the hazards of asbestos through his union, employers and coworkers. Therefore, Appellants have failed to meet their burden of proving that [MetEd] had superior knowledge of this hazard, and consequently [MetEd] had no duty to warn either Mr. Gutschall or his employers of a condition that was at least as obvious to them as it was to [MetEd].

Trial Court Opinion, 8/12/14, at 11-12. The trial court provided the following analysis in concluding that summary judgment should be granted in favor of MetEd:

> Appellants have not produced sufficient evidence that Met Ed had superior knowledge of the hazards of asbestos on its premises. Despite attaching hundreds of pages of exhibits to their Answer to Met Ed's Motion for Summary Judgment, Appellants provided <u>no</u> documents specific to Appellants' contention that Met Ed had superior knowledge of the hazards of asbestos on its premises during the relevant time period. Even the report of Appellants' expert, Dr. Frank (Exhibit "F" to Appellants' Answer to Met Ed's Motion for Summary Judgment) makes <u>no</u> reference to any documents which indicate that Met Ed had superior knowledge. Instead, on page 2 of the report, Dr. Frank makes the general statement, "I will testify as to the state of the art of scientific knowledge of the hazards of exposure to asbestos, the knowledge that premises owners **could have had** of the hazards of asbestos, and the companies' ability and obligation to warn of those dangers."
>
> To the contrary, the record clearly shows Mr. Gutschall was an experienced union boilermaker who had substantial knowledge of the hazards of asbestos through his union, employers and coworkers. Consequently, Met Ed had no duty to warn either Mr. Gutschall or his employers of a condition that

was at least as obvious to them as it was to Met Ed. Therefore, [the trial court's] granting of Met Ed's Motion for Summary Judgment was proper, and should be affirmed.

Trial Court Opinion, 8/12/14, at 16-17 (emphasis added).

The trial court's analysis and conclusion are supported by the evidence of record. Thus, even if this issue was not waived, we would conclude that it has no merit.

In their final issue, Appellants argue that the trial court erred "by granting summary judgment on the basis that [Appellants] failed to prove asbestos exposure at MetEd's premises." Appellants' Brief at 26-27. Despite this claim, Appellants fail to identify where in the trial court's opinion that determination is made, and we discern no statement in the trial court's opinion wherein it concluded that Appellants failed to prove asbestos exposure at MetEd facilities. Thus, this claim also lacks merit.

We further note that our Supreme Court has consistently held that establishing exposure to asbestos alone is insufficient to establish liability. In **Gregg v. V-J Auto Parts, Co.**, 943 A.2d 216, 226 (Pa. 2007), the Supreme Court rejected the viability of the "each and every exposure" or "any breath" theory. In summarizing its holding, the **Gregg** Court explained:

> In summary, we believe that it is appropriate for courts, at the summary judgment stage, to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the

necessary inference of a sufficient causal connection between the defendant's product and the asserted injury.

**Gregg**, 943 A.2d at 227.

In **Betz v. Pneumo Abex, LLC**, 44 A.3d 27, 30 (Pa. 2012), the Supreme Court specifically addressed the admissibility of expert opinion of the "any-exposure" or "any breath" theory of causation, which states, "each and every fiber of inhaled asbestos is a substantial contributing factor to any asbestos-related disease." **Id.** at 30. The **Betz** Court precluded the use of the "any exposure" theory of causation in asbestos cases. **Id.** at 58.

Additionally, in **Howard v. A.W. Chesterton, Co.**, 78 A.3d 605, 608 (Pa. 2013) (*per curiam*) (**Howard III**), our Supreme Court indicated that the following principles apply to all asbestos cases involving a dose-responsive disease: (1) the "theory that each and every exposure, no matter how small" is not viable to establish a defendant's liability; (2) proof of *de minimus* exposure to a product is insufficient to establish causation; (3) an expert must make "some reasoned, individualized assessment of a plaintiff's or decedent's exposure history" in opining about substantial-factor causation of the asbestos disease; and (4) summary judgment "is an available vehicle" for challenging *de minimus* exposure. **Howard III**, 78 A.3d at 608.

Thus, assuming *arguendo* that Appellants established that Mr. Gutschall was exposed to asbestos on MetEd's premises, such showing alone would not be sufficient to survive summary judgment. Therefore, if we were

to address this issue, we would not agree that the trial court abused its discretion in granting summary judgment in favor of MetEd.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/1/2015