JUSTICE BAER, concurring
I join the erudite Majority Opinion. I write only to voice my concern with one aspect of its expression. Atypically, the Majority twice invokes this Court's "supervisory authority" to mandate substantive modifications to the entry of appearance form under scrutiny. We do not often invoke our superintendence of the judiciary as justification for a sua sponte form change, and I have no recollection of the *766 Court ever employing this precept to alter a form (or rule) within an opinion. Rather, our normal protocol is to refer the underlying issue to the appropriate committee and permit it to consider adjustments through its customary process. Notably, in this regard, we presently have an ad hoc committee reviewing all aspects of Pennsylvania's grand jury practice.
Be this as it may, I can abide by the Majority's invocation of our supervisory authority and employment thereof in an opinion to alter the subject entry of appearance form in two substantive aspects so long as it is understood that the use of this methodology does not alter the inherent ability of our various committees, including the ad hoc grand jury study group, to modify the form as statutory changes, caselaw, or other superseding factors would require. While the Majority does not say this, it does not suggest anything to the contrary.
Accordingly, I write to clarify that I view the Majority Opinion's modification of the entry of appearance form to resolve the case before us as in no way precluding or, indeed, discouraging, necessary variations now or in the future as recommended by any appropriate Court committee, including the ad hoc committee studying grand jury practice. This understanding would be as of course if the Court had made these adjustments upon a committee's recommendation. The Majority's invocation of our supervisory powers and employment of an opinion to make these alterations should not alter this typical process for rule and form variations.
Chief Justice Saylor and Justices Todd, Dougherty and Mundy join this concurring opinion.
JUSTICE DONOHUE, concurring and dissenting
I join the Majority Opinion because I agree that the General Assembly intended to limit the ability of attorneys participating in grand jury proceedings, including those representing witnesses, to disclose "matters occurring before the grand jury," subject to certain exceptions. See 42 Pa.C.S. § 4549(b). Moreover, the nondisclosure requirements in the entry-of-appearance form created by the Office of Attorney General ("OAG") were overbroad and, if such a form is to be used in future grand jury proceedings, it must be tailored to conform to section 4549(b). See Majority Op. at 760-62. Finally, I agree that attorneys representing grand jury witnesses may enter common interest/joint defense agreements. See id. at 762-63.
I write separately to distance myself from the Majority's sweeping invocation of this Court's "supervisory authority" to redraft the form and to justify what is, in many respects, an advisory opinion on grand jury practice generally.
The facts of this case are scant. The Dioceses of Harrisburg and Greensburg (the "Dioceses") were represented by counsel in connection with the Fortieth Statewide Grand Jury Investigation. Pursuant to this investigation, the grand jury subpoenaed the Dioceses for documents. At some point following their production of documents, counsel for the Dioceses requested a copy of the OAG's notice of submission.[1] The Supervising Judge informed *767 counsel he would need to sign an entry-of-appearance form prior to production of the notice of submission. Counsel refused to sign the form, objecting to the broad nondisclosure requirement contained therein. The Dioceses then filed a joint motion to strike the nondisclosure requirement as unauthorized by the Investigating Grand Jury Act (the "Act"), 42 Pa.C.S. §§ 4541 - 4553.
The nondisclosure requirement on the entry-of-appearance form prohibits attorneys representing client-witnesses[2] from disclosing "all that transpires in the Grand Jury room, all matters occurring before the Grand Jury, and all matters and information concerning this Grand Jury obtained in the course of the representation, except when authorized by law or permitted by the Court." Entry-of-Appearance Form (citing 42 Pa.C.S. § 4549(b) ). By contrast, section 4549(b), relating to disclosure of proceedings by participants other than witnesses, provides:
Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the Commonwealth for use in the performance of their duties. The attorneys for the Commonwealth may with the approval of the supervising judge disclose matters occurring before the investigating grand jury including transcripts of testimony to local, State, other state or Federal law enforcement or investigating agencies to assist them in investigating crimes under their investigative jurisdiction. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court. All such persons shall be sworn to secrecy, and shall be in contempt of court if they reveal any information which they are sworn to keep secret.
42 Pa.C.S. § 4549(b) (emphasis added).
As the Majority properly explains, there is little to indicate that the General Assembly intended the word "attorney" to mean something other than what it is commonly understood to mean, i.e., "those who are licensed to practice law." See *768 Majority Op. at 758. To the extent there is any ambiguity surrounding the meaning of the word, however, an examination of the purpose behind the Act makes clear that this provision must be understood to require a degree of secrecy from all attorneys participating in a grand jury proceeding, not just attorneys for the Commonwealth. See 1 Pa.C.S. 1921(c).
This Court has explained on numerous occasions that the secrecy of grand jury proceedings is "indispensable to the effective functioning of a grand jury." In re Dauphin County Fourth Investigating Grand Jury , 610 Pa. 296, 19 A.3d 491, 503 (2011) ; see also, e.g., Investigating Grand jury of Phila. Cty. , 496 Pa. 452, 437 A.2d 1128, 1130-31 (1981). In describing the policy justifications for such secrecy, we have highlighted the need:
(1) to prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.
Id. We have also explained that the Act, and section 4549(b) in particular, represent the General Assembly's efforts to preserve the traditional rule of secrecy. In re Dauphin County Fourth Investigating Grand Jury , 19 A.3d at 503. Allowing attorneys representing grand jury witnesses to disclose freely all "matters occurring before the grand jury" would substantially undermine the purpose of section 4549(b) as it would create an exception to its secrecy protections that would likely swallow the rule.
That said, there are limitations to an attorney's obligation to keep matters secret. First, the statute is clear that only "matters occurring before the grand jury" may be encompassed by the secrecy oath. See 42 Pa.C.S. § 4549(b). Second, because the Act permits a witness "to disclos[e] his testimony before the investigating grand jury," it must also be understood to allow an attorney representing that witness to disclose her client's testimony to the same degree.[3] See 42 Pa.C.S. § 4549(d) (relating to disclosure of proceedings by witnesses) (emphasis added); see also Majority Op. at 760. Third, as with all participants in a grand jury proceeding, an attorney may disclose matters occurring before the grand jury if "so directed by the court." 42 Pa.C.S. § 4549(b). Any oath of secrecy a *769 private attorney is required to take must strictly reflect these statutory limitations. I am in agreement with the Majority that, relevant to the statutory language, the nondisclosure requirement on the entry-of-appearance form at issue today is overbroad. In its current incarnation, it contains language beyond the Act's mandate and meaning. Thus, the Majority concludes that the language mandating secrecy for "all matters and information concerning this Grand Jury obtained in the course of representation" must be stricken. See Majority Op. at 761-62. The Majority also concludes that certain other language is non-offending ("all matters occurring before the Grand Jury"). See Majority Op. at 761-62. Additionally, the Majority rewrites the form to include language that authorizes attorney disclosure to the extent his or her client/witness is authorized to disclose. See Majority Op. at 760-61. While I have no particular disagreement with the Majority's scrivening, I do not believe that we should engage in the task. Instead, I would strike the nondisclosure language from the form entirely. I would not re-draft the form, as doing so is both unnecessary and counterproductive.[4]
As an initial matter, no attorney is presently being asked to enter his or her appearance in the 40th Statewide Grand Jury proceedings and, as the Majority recognizes, "the present appeal bears hallmarks of a moot controversy." Majority Op. at 756 n. 8 (observing that counsel for the Dioceses was in fact provided with a copy of the notice of submission despite their refusal to sign the entry-of-appearance form and that the tenure of this grand jury has expired).
Moreover, in my view, the development of a nondisclosure form such as the one at issue here should fall, in the first instance, to our ad hoc committee on grand jury practice. The ad hoc committee is comprised of members selected for their expertise in this specialized area and, like our other rules committees, is designed to assist the Court in the exercise of our supervisory authority. We have charged this committee with studying the broader issues attendant to grand jury practice and proposing rules for publication and public comment prior to this Court's consideration and ultimate adoption. The drafting of a nondisclosure form to be used by future grand juries falls squarely within the traditional purview of a rules committee of this Court.[5] The Committee would be guided by this Court's discussion herein of the relevant statutory language and the nuances of grand jury practice.[6]
*770 Because I would strike the nondisclosure requirement from the form, I would also conclude that disposing of the Dioceses' other arguments -- regarding the extent to which the nondisclosure requirement infringed upon certain of their rights and those of their counsel -- is inappropriate. This is all the more true in light of the fact that the Dioceses do not ask us to determine whether any specific piece of information constitutes a "matter occurring before the grand jury" such that counsel is prohibited from disclosing it. They do not ask us to determine whether a specific statement their attorneys seek to disclose constitutes witness "testimony" such that they or their counsel may freely share it with a third party. Indeed, these questions are not before us because the limited facts of this case do not give rise to them. The Majority nonetheless posits, as a general proposition, that the term "matters occurring before the grand jury" encompasses events "beyond only what actually transpires in a grand jury room." Majority Op. at 762. The Majority also indicates that "such matters subsume a range of considerations beyond the mere content of a client-witness's testimony, including comments by a supervising judge or the attorney of the Commonwealth made before the grand jury and evidence which may be proffered or discussed during a witness's testimony." Id. at 760.[7]
In my view, the Majority violates a central jurisprudential tenet that decisional law is meant to develop "incrementally, within the confines of the circumstances of cases as they come before the Court." Scampone v. Highland Park Care Ctr., LLC , 618 Pa. 363, 57 A.3d 582, 604-05 (2012) (insisting that the Court must respect "the necessary narrowness of the individual decisional task and the limitations of imperfect foresight"). Rather than embracing precision, the Majority renders determinations that do not "spring from the facts before us in the appeal" or, frankly, from any facts at all. See id. ; see also Howard ex rel. estate of Ravert v. A.W. Chesterton Co. , 621 Pa. 343, 78 A.3d 605, 610 (2013) (Todd, J., concurring) (urging that "judicial decisions are to be read against their facts, so as to prevent 'the wooden application of abstract principles to circumstances in which different considerations may pertain' "). I distance myself from the Majority's pronouncements that are unnecessary to the resolution of this case. In the absence of a record enabling us to do so, this Court should refrain from attempting to flesh out the contours of section 4549(b).
*771 For similar reasons, the Majority's discussion of the common interest/joint defense doctrine is problematic. See Majority Op. at 763-64. The Dioceses' arguments about joint defense/common interest agreements are based upon the nondisclosure language in the form. As I have indicated above, I would strike the offending language as a matter of statutory interpretation. Thus, no issue regarding joint defense/common interest agreements remains for this Court's resolution. Nevertheless, the Majority proceeds in part three to engage in a general discussion of joint defense/common interest agreements in grand jury proceedings. While I agree in principle that attorneys representing witnesses in grand jury proceedings may enter common interest/joint defense agreements, the facts presently before us do not implicate the common interest/joint defense doctrine or its contours.
Despite the lack of record facts or any proffered joint defense agreement, the Majority opines that " section 4549(b) does appear to serve as a restraint on the range of information that will be available to counsel to share per a privilege-extending arrangement." Id. at 764. While I certainly recognize the importance of grand jury secrecy, I am not prepared to conclude -- based on a purely hypothetical argument, disconnected from any facts -- that grand jury secrecy per se trumps any specific common interest/joint defense privilege.
While the Majority recognizes that it reaches beyond the controversy before us in drawing the foregoing conclusions, it purports to justify doing so by reference to this Court's "supervisory authority" over grand jury matters. See Majority Op. at 756-57 n. 8. In my view, the supervisory authority we possess with regard to grand jury matters[8] does not give rise to an ability to issue broad pronouncements that are purely advisory in nature, untethered to facts at issue.
I join the Majority's limited holding in parts one and two to the extent that they find section 4549(b) applicable to attorneys, and that certain provisions in the nondisclosure form were overbroad. As to the balance of the Opinion, including part three, I dissent on the basis that those portions are inappropriately advisory in nature.

Both the Majority and Justice Donohue take issue with my discussion of this background. See Maj. Op. at 765 n.26; Concurring and Dissenting Opinion (Donohue, J.) at 769 n.4. Specifically, Justice Donohue describes my objective recitation of the circumstances that led to the creation of the form as "paint[ing] with a broad brush in describing the alleged genesis" of the form. Id. (emphasis added). Doing so, she asserts, is "dangerous" because former-Justice Baldwin currently is facing disciplinary proceedings. Id. I disagree. My recounting of these circumstances is in no way a proclamation of wrongdoing or unethical behavior. I offer no thoughts or opinions of the propriety of any action taken by any relevant actor, including former-Justice Baldwin. The background I summarize simply recites the facts outlined by the Superior Court in the appeals of the criminal judgments imposed upon the administrators who were called before the grand jury. See Commonwealth v. Curley , 131 A.3d 994 (Pa. Super. 2016) ; Commonwealth v. Spanier , 132 A.3d 481 (Pa. Super. 2016) ; Commonwealth v. Schultz , 133 A.3d 294 (Pa. Super. 2016).
As to Justice Donohue's assertion that these circumstances were the "alleged" genesis of the form, I note that the OAG explained in its brief to this Court that it created the form as a direct response to the concerns that emanated from the confusion caused by the Penn State matters that I relate herein. I do not speculate that the Penn State situation was the genesis of the form; the OAG publicly acknowledges that it was. See Redacted Brief for the OAG at 2-5.

See generally Commonwealth v. Curley , 131 A.3d 994 (Pa. Super. 2016) ; Commonwealth v. Spanier , 132 A.3d 481 (Pa. Super. 2016) ; Commonwealth v. Schultz , 133 A.3d 294 (Pa. Super. 2016).

See Spanier , 132 A.3d at 485.

See Fed.R.Crim.P. 6(d)(1) (outlining who may be present in the room while the grand jury is in session).

That does not mean that there can be no meritorious challenge to the form in the future. For instance, as the Majority indicates, this Court has exclusive authority to regulate the conduct of attorneys. See Maj. Op. at 760 n.17 (citing Pa. Const. , art. V, § 10 (c) ). It is at least arguable that the Act, by requiring attorneys to maintain silence even though witnesses are not so restrained, intrudes upon that prerogative. However, presently, no one challenges the form, or the Act, upon that basis. That question is not before the Court, and I accordingly express no opinion regarding the merits of such a theory.

The Majority also cites this Court's call in Dauphin County for a "strong judicial hand" in grand jury proceedings in support of the broad "supervisory authority" it invokes. See Maj. Op. at 764. However, a fair reading of Dauphin County demonstrates that this Court was not recognizing any particular authority of this Court, and that we did not there bestow any authority upon this Court. Rather, we unequivocally were referring to the important role that a supervising judge must play in ensuring that the secrecy of a grand jury is maintained. See Dauphin County , 19 A.3d at 503. Indeed, in the sentences that immediately follow the "strong judicial hand" language, this Court referenced the "seminal role of the supervising judge of a grand jury," noted that "the supervising judge has the singular role in maintaining the confidentiality of grand jury proceedings," and explained that the "supervising judge has the continuing responsibility to oversee grand jury proceedings, a responsibility which includes insuring the solemn oath of secrecy is observed by all participants." Id. (citations and quotation marks omitted). The "strong judicial hand" language did not pertain in any way to the review function of an appellate court.
That said, as I have indicated throughout this opinion, my primary concern is not the source of our "supervising authority." I do not, as the Majority maintains, intend to imply that this Court should not "exercise a meaningful degree of control over grand jury practice." Maj. Op. at 764. I simply cannot agree that this authority can override the General Assembly's clear language (and intent) and permit additional disclosures of secret information beyond the unambiguous limitation set forth in the statute.

Justice Donohue disputes my characterization. See Concurring and Dissenting Opinion (Donohue, J.) at 769-70 n.6. Specifically, Justice Donohue interprets the form as "prohibiting certain categories of disclosure that are not in fact prohibited by the statute," and "not sufficiently accounting for the kinds of disclosures an attorney is statutorily permitted to make." Id. She concludes that, based upon "a plain reading of the statute," the General Assembly intended attorneys to be bound by secrecy only to the same extent that their clients are bound.
However, like the Majority, Justice Donohue fails to account for the General Assembly's use of the term "only" in Subsection 4549(b). The relevant language from that subsection is plain and clear. The subsection states that an "attorney" (which, we all agree, includes private defense lawyers) "may disclose matters before the grand jury only when so directed by the court." 42 Pa.C.S. § 4549(b) (emphasis added). Thus, the General Assembly created a single circumstance in which an "attorney ... may disclose matters." Axiomatically, then, if there is only one circumstance in which an attorney may speak, all others statutorily are prohibited. Thus, the category of disclosure at issue is not permitted as Justice Donohue suggests; it is, in fact, prohibited.
Neither the Majority nor Justice Donohue contends that the language, including the word "only," is ambiguous. We are not permitted to ignore those terms in order to give effect to the General Assembly's presumed intent. See 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). I am constrained to view the General Assembly's use of the term "only" as a clear expression of legislative intent to limit attorneys in this fashion. I discern no indicia in the language of the Act or otherwise to suggest that the General Assembly did not mean exactly what it said.
Because the unambiguous statutory language affords attorneys only one mechanism to disclose grand jury matters and the Majority adds a second, it is fair to characterize the Majority's actions as rewriting the statute. See Penna. Med. Soc. v. Dep't of Pub. Welfare of Com. , 614 Pa. 574, 39 A.3d 267, 283 (2012) ("In this regard, it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include.") (citations and internal quotation marks omitted).

The Majority asserts that I have not explained why permitting a lawyer to disclose what her client is free to disclose is "an unacceptable intrusion into secrecy," an interest that I have emphasized throughout this opinion. Maj. Op. at 765. Let me be clear: I do not believe that it would be such an intrusion. If the choice were mine, I would endorse the Majority's approach. The problem is that the choice is not mine. That decision resides with the General Assembly. That body chose not to enact the Majority's process. We are bound to that legislative judgment, as we are in all matters of statutory interpretation, regardless of the breadth of our supervisory authority.
The Majority appears to invoke the canon of statutory construction that permits courts to interpret statutory provisions in a manner that avoids absurd results. Id. ; see 1 Pa.C.S. § 1922(1) (stating that, in ascertaining statutory intent, courts may presume that "the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable."). However, it is not an absurd result to conclude that the General Assembly, undoubtedly cognizant of the importance of secrecy in grand jury proceedings, intended to limit those authorized to disclose otherwise confidential matters to as few persons as possible, particularly when we consider the deliberate choice of the term "only" in Subsection 4549(b). Further, as I stress repeatedly herein, the statute plainly does not foreclose all possible avenues by which an attorney in this circumstance may speak for her client-she simply may obtain the permission of the supervising judge.